GOLTERMANN, *Appellant*, v. SCHIERMEYER.

In Banc, December 4, 1894.

1. **Land Title:** BOUNDARY LINE: ESTOPPEL. Where one of two adjoining land proprietors places a fence on what is erroneously supposed by both to be the proper boundary line, the other is not estopped to thereafter set up the error.

2. ———: ———: ADVERSE POSSESSION: STATUTE. The statutory rule (R. S. 1889, sec. 6768) that possession, under color of title, of a part of a tract or lot of ground in the name of the whole tract claimed, and exercising, during the time of such possession, the usual acts of ownership over the whole tract shall be deemed a possession of the whole of such tract is not applicable to cases of interfering or lapping surveys forming boundaries between adjacent proprietors.

3. ———: ———: ———: ———. The legal possession in such case is adjudged to be in him who has the better title, but if he who has the inferior title enters upon the interference and actually occupies it adversely to him who has the better title for a sufficient length of time, he will acequire the title against the true owner by limitation as to the part actually occupied, although the true owner may be in the actual possession of that part of his tract not covered by the interference.

4. ———: ———: ———. Where possession of land is taken in good faith under color of title or claim of right, the erection of a fence, building or other improvement is not necessary to constitute adverse possession; visible acts of ownership exercised over the premises in controversy for the time limited in the statute is all that is required to constitute such adverse possession.

5. ———: CLAIM OF OWNERSHIP: POSSESSION. A mere claim to land, unaccompanied by possession will not ripen into a title, however long or persistently such claim is asserted.

6. ———: ———: ———. An owner is not required to assert or to defend his title so long as his constructive possession is not interrupted.

Goltermann v. Schiermeyer.

7. **Adverse Possession:** EVIDENCE. Evidence in this case reviewed and *held,* not to show continuous and visible adverse possession on defendant's part as claimed by him.

*Appeal from St. Charles Circuit Court.*

REVERSED AND REMANDED.

*H. C. Lackland* and *C. W. Wilson* for appellant.

(1) Defendant's instruction number 1 is illegal. *First.* It predicates the defendant's right to recover upon the proposition that the plaintiff and his predecessors made no claim to the land in dispute, and that defendant and his grantor claimed the land as their own. This branch of the instruction is grossly erroneous. *Thomas v. Babb,* 45 Mo. 387; *Mayler v. Hughes,* 60 Mo. 105. *Second.* It assumes that the defendant had been cutting rails and house logs on the eastern end of the land in dispute; when there was not a particle of evidence upon which to base such a declaration. *Stone v. Hunt,* 94 Mo. 480; *Maffitt v. Conklin,* 35 Mo. 457; *Liggett v. Morgan,* 98 Mo. 42; *Harty v. Railroad,* 95 Mo. 371; *Waddingham v. Hughlett,* 92 Mo. 535. *Third.* This instruction is confused and awkward in its phraseology, and was necessarily misleading to the jury. *Belt v. Goode,* 31 Mo. 128; *Donahoe v. Railroad,* 83 Mo. 560. *Fourth.* It predicates the defendant's right to a verdict upon simple proof of actual occupation of one part, and the exercise of acts of ownership over the other. *Thomas v. Babb,* 45 Mo. 386. (2) Defendant's instruction number 3, is grossly erroneous. *First.* It was wholly inapplicable to the case at bar, where the plaintiff, the real owner, was in the actual occupation of his farm, of which the disputed land was a part, and in which nothing short of actual occupation by inclosure or cultivation could

oust his possession. *Goltermann v. Schiermeyer*, 111 Mo. 421; *Bradley v. West*, 60 Mo. 33; *Griffith v. Schwenderman*, 27 Mo. 412; *Schultz v. Lindell*, 30 Mo. 310; *Crispen v. Hannavan*, 50 Mo. 536; *St. Louis v. Gorman*, 29 Mo. 593; *Thomas v. Babb*, 45 Mo. 387; *Land Co. v. Hays*, 105 Mo. 151; *Turner v. Hall*, 60 Mo. 277. *Second*. It predicates the defendant's right to recover upon the proposition, that he and those under whom he claims, have exercised acts of exclusive dominion over the land, such as "paying taxes, cutting timber, etc." whereas there was no evidence to show that defendant had paid the taxes on the land in dispute. *Kennedy v. Railroad*, 36 Mo. 364; *Maffit v. Conklin*, 35 Mo. 457; *Stone v. Hunt*, 94 Mo. 480; *Chouquette v. Barada*, 28 Mo. 497; *Merrit v. Givens*, 34 Mo. 98; *Turner v. Loler*, 34 Mo. 461; *Liggett v. Morgan*, 98 Mo. 42, 43. *Third*. It declares the defendant entitled to a verdict upon proof of the exercise of mere acts of ownership, such as paying taxes, cutting timber, etc., without regard to whether these acts were continuous and without reference to when they commenced. By its terms it purports to cover the whole case, and leave nothing to be supplied. *Thomas v. Babb*, 45 Mo. 388; *Norfleet v. Hutchins*, 68 Mo. 599. (3) The court committed reversible error in refusing instructions asked by plaintiff. *First*. Plaintiff's instructions refused, numbers 1 and 2, should have been given. *Pike v. Robertson*, 79 Mo. 618; *Cahn v. Reed*, 18 Mo. App. 116; *Thomas v. Babb*, 45 Mo. 387; *Leeper v. Baker*, 68 Mo. 406; *Chapman v. Templeton*, 5 Mo. 463. *Second*. Plaintiff's instruction refused, number 3, should have been given. By the pleadings in the case, the question of mistaken possession was distinctly put in issue. This instruction correctly declares the law. *Shad v. Sharp*, 95 Mo. 574; *Jacobs v. Mosley*, 91 Mo. 457; *Keen v. Schnedler*, 92 Mo.

516; *University v. McCune*, 28 Mo. 482; *Thomas v. Babb*, 45 Mo. 387; *Crawford v. Ahrnes*, 103 Mo. 88; *Knowlton v. Smith*, 36 Mo. 507. *Third.* Plaintiff's refused instructions numbers 4 and 5 are unquestionably right. It was error to refuse them. *Turner v. Hall*, 60 Mo. 271; *Bradley v. West*, 60 Mo. 33; *Bartlett v. Donoghue*, 72 Mo. 563. *Fourth.* Plaintiff's instruction refused, number 7, is right. The court committer reversible error in refusing it. *Devit v. Railroad*, 50 Mo. 304; *Goltermann v. Schiermeyer*, 111 Mo. 421. *Fifth.* Plaintiff's refused instruction, number 8, was improperly refused. It is unmistakably the law. *Bradley v. West*, 60 Mo. 33; *Turner v. Hall*, 60 Mo. 271; *Griffith v. Schwenderman*, 27 Mo. 412; *Schultz v. Lindell*, 30 Mo. 310; *Crispen v. Hannavan*, 50 Mo. 536; *St. Louis v. Gorman*, 29 Mo. 593; *Thomas v. Babb*, 45 Mo. 385; *Goltermann v. Schiermeyer*, 111 Mo. 421. (4) There was no estoppel *in pais* made out in this case. The matter pleaded in the answer is insufficient in itself. But the evidence wholly fails to show, that defendant or his grantor were induced to take possession by any representations of the plaintiff or his ancestor. *Hammerslough v. Cheatham*, 84 Mo. 21; *St. Louis v. Lumber Co.*, 98 Mo. 617; *Noble v. Blount*, 77 Mo. 242; *Spurlock v. Sproule*, 72 Mo. 509; *Bales v. Perry*, 51 Mo. 440.

*Theodore Bruere* and *T. F. McDearmon* for respondent.

(1) *First.* There is no error in the instructions given by the court at the request of the defendant. They declared the law in exact conformity to the decision of this court in this case and substantially in the language of its opinion. *Goltermann v. Schiermeyer*, 111 Mo. 404; *Cole v. Parker*, 70 Mo. 377; *Handlan v.*

*McManus*, 100 Mo. 125; *Battner v. Baker*, 108 Mo. 311; *Thomas v. Babb*, 45 Mo. 384; *Mississippi Co. v. Vowels*, 101 Mo. 225; *Leeper v. Baker*, 68 Mo. 400; *Draper v. Shoot*, 25 Mo. 201. *Second.* The court committed no error in refusing instructions asked by the plaintiff. They were in direct conflict with the decision of this court in this case and with the well settled law. See cases above cited. *Third.* The court committed error in giving instructions asked by the plaintiff and of its own motion and refusing instructions asked by the defendant, but the error was favorable to the plaintiff and he ought not to complain of the result. See authorities cited above. *Fourth.* The defense of the statute of limitations was thoroughly and completely made by undisputed testimony, under the rulings of this court in this case. and the court should have taken the case from the jury. *Goltermann v. Schiermeyer*, 111 Mo. 404, and cases cited above. (2) The defense of estoppel was also thoroughly sustained and the court should have, for this reason, taken the case from the jury, or at least given defendant's instructions numbers 7 and 8. *Simmons v. Harstock*, 80 Mo. 13; *Majors' Heirs v. Rowse*, 57 Mo. 384; *Cooper v. Verra*, 59 Cal. 282; *Johnson v. Brown*, 63 Cal. 391; *Davis v. Lodge*, 46 Vt. 655; *Spaulding v. Warren*, 25 Vt. 316; *Peerson v. Mosher*, 30 Barb. 81; *Baldwin v. Brown*, 16 N. Y. 359; *Case v. Trapp*, 49 Mich. 59.

MACFARLANE, J.—The suit is ejectment originally to recover sixteen and ninety-five one hundreths acres of land in section 31, township 46, range 1 east, in St. Charles county. The controversy originally involved the location of the true line running east and west through the center of said section, plaintiff having title to the south part of the northwest quarter

and the west half of the northeast quarter and defendant having title to the southwest quarter and the northwest quarter of the southeast quarter. The disputed land extended from a north and south line through the center of the east half of the section to the west side thereof, being one and six hundreths chains wide on the east and four and thirty-eight hundredths chains on the west end thereof.

Each party, at the commencement of the suit, was in actual possession of the lands to which he had undisputed title, using them as farms, but the strip in controversy was in the inclosure of defendant. Two surveys of the line east and west through the center of the section conflicted and the disputed land lay between them. Both purported to be according to the original United States survey. The most northerly line was made by county surveyor Krekel at an early day and was known as the Krekel line. Defendant was in possession to this line and plaintiff was in possession of the land north of it at the commencement of this suit.

On a former trial plaintiff recovered judgment in the circuit court and the defendant appealed. That appeal was heard and determined by this court and the opinion of the court is reported in 111 Mo. 404, to which reference is made for a more detailed statement of the facts.

This court held that the most southerly line was the true one, and that plaintiff and his grantors, under their patents from the United States, acquired the title to the disputed land. It also held that under the undisputed evidence defendant and his grantors had ever claimed the Krekel line as the true one. A majority of the court also held that defendant had acquired title to the west two thirds (in length) of the land by the undisputed adverse possession thereof

for the requisite period. The judgment was accordingly reversed and the cause remanded for a new trial on the question of fact concerning adverse possession of the east end of the land which had not been inclosed by defendant for ten years next before the commencement of the suit.

On a retrial the evidence was substantially the same as it was shown to have been by the record of the first trial, the evidence bearing on adverse possession being more in detail. The judgment was for defendant and plaintiff appealed.

I. Before the trial defendant amended his answer, pleading that plaintiff by his acts and conduct was estopped to deny defendant's title to the Krekel line. On the question of estoppel defendant asked, and the court refused to give, the following instruction:

"8. If the jury believe from the evidence, that Ernest Goltermann, under whom plaintiff claims title to the land in dispute, in 1848, or about that time, pointed out to John H. Knippenberg, the owner of the land adjoining that of said Goltermann in the south half of section 31, township 47, range 1 east, the line designated by the evidence in the case as the Krekel line, as and for the true boundary line between his and the said Knippenberg's land, and that the said Knippenberg, acting upon the faith of said representation, built a fence for about a quarter of a mile on and along the west end of said line, and used the land thus inclosed in connection with his farm for pasture or otherwise up to said fence, and that defendant thereafter, about the year 1868 or 1869, extended said fence east and along said Krekel line about one quarter of a mile and used the land thus inclosed in connection with his farm for pasture or otherwise up to said fence, and again in 1879 or 1880, or about that time, extended said fence east on and along said line to his eastern

boundary, and used the said lands for pasture, firewood or other purposes, up to said fence, thus extended, and that during all this time the plaintiff and those under whom he claims were living on the lands adjoining and north of said line, and recognized the said line as the true line, and permitted said improvements to be made by said Knippenberg and defendant without objection, then the plaintiff is estopped from asserting that the Krekel line is not the true line and the jury are instructed that the verdict must be for the defendant as to all of the land in dispute.''

The evidence showed conclusively, and without dispute, the facts upon which the instruction was hypothecated. If the principles of law are, therefore, correctly declared, the judgment was for the right party and should be affirmed.

There is no doubt that both parties recognized the Krekel line as the true one, until after defendant had inclosed the land now in dispute, that is, the east end of the strip, in the year 1879 or 1880, but there is no evidence that the Krekel line along this part of the disputed land was then, or for thirty years prior thereto had been, pointed out by plaintiff or his grantors. The northwest quarter of the southeast quarter of the section which was inclosed by defendant with the three and fourteen hundredths acres in dispute was timber land, and was only used for pasture and for firewood, and such other purposes as such land is applied to in connection with a farm. The dwelling or its appurtenances were not disturbed. Plaintiff testified; the evidence conclusively showed, and it was adjudged on the former appeal, that defendant always claimed title to the Krekel line.

It is manifest that essential elements necessary to create an estoppel *in pais* are wanting under the facts in this case. It is said in *Bales v. Perry*, 51 Mo. 449:

"The courts all concur in this, that no man can set up another's act or conduct as the ground of an estoppel, unless he has himself been misled or deceived by such act or conduct; nor can he set it up where he knew or had the same means of knowledge as to the truth of the statement as the other party." Defendant inclosed the east part of the strip in question because he believed he owned it and not on account of anything done or said by plaintiff. The Krekel line was well known to both parties, but they were mutually mistaken in believing it to be the true line. Under the evidence, we think the instruction properly refused.

II. The evidence shows conclusively that defendant and his grantors claimed to the Krekel line from about 1848 to the commencement of the suit, of which, during the whole time, plaintiff and his grantors had notice and knowledge; that plaintiff built his own fences on or near the Krekel line, where they remained until the commencement of this suit, and, by his conduct, recognized that line as the true one. Defendant inclosed, without objection by plaintiff, about two thirds, being the western part, of the land more than ten years before the commencement of this suit. This was permitted by plaintiff under the mistaken belief that the Krekel line was the true one and not under any agreement as to the true line.

The forty acre tract that was inclosed with the east end of the strip now in dispute was unimproved timber land at the time of its inclosure. Defendant had other timber land between his dwelling and said forty acre tract. Only a portion of the disputed land was susceptible of cultivation. Witnesses testified in a general way that defendant exercised such acts of ownership over the land as were usual under such circumstances. The only proof of specific acts of ownership by defendant will be noticed hereafter. When

plaintiff fenced his land he left an irregular strip averaging about one hundred feet in width, between his fence and the Krekel line, which was used for a private or neighborhood road. The only real question in the case under this evidence is whether defendant acquired title by adverse possession to the land which had not been inclosed by fence for ten years when the suit was commenced.

In the consideration of this question we must bear in mind that the statutory rule (R. S. 1889, sec. 6768) that possession under the color of title, of a part of a tract, in the name of the whole tract claimed, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, shall be deemed, under the statutes of limitation, a possession of the whole of such tract, is not applicable to cases of interfering or lapping surveys forming boundaries between adjacent proprietors.

The exception is recognized by Judge Scott in *McDonald v. Schneider*, 27 Mo. 411 in the following language: "Where two persons possess adjoining tracts and their possession conflicts or interferes the one with the other, the legal possession is adjudged to be in him who has the better title—for, as both can not be seized, the possession follows the title—yet, if he who has the inferior title enters upon the interference and actually occupies it adversely to him who has the better title for a sufficient length of time, he will acquire a title against the true owner by limitation as to the portion actually occupied, although the true owner may be in the actual possession of that portion of his tract which is not covered by the interference." So, Judge Black says in this case (111 Mo. 421): "As the plaintiff is the rightful owner of his farm, and is in possession of a part, that possession will draw to him possession of all the land embraced in his muniments of title

which is not in the actual exclusive possession of the defendant; and this would be true if defendant had color of title. The defendant, to defeat this action, must, therefore, show actual, exclusive adverse possession for the period of ten years before the commencement of this suit." See, also, *Ozark, etc., Land Co. v. Hays*, 105 Mo. 151 and the rule there summarized, and cases cited.

While the records of the county court concerning the survey and sale of the south half of the section as school lands, which were introduced in evidence in this trial, and the patents issued by the state to the purchasers, may show color of title in defendant to the disputed strip of land, still, plaintiff, having title to, and possession of, the remainder of the tract, is seized of all contained within the muniments of his title, to which defendant had not acquired seizin by actual, visible and exclusive, adverse possession for ten years.

III. The impracticability of formulating any general rule for determining what possessory acts will start the running of the statute and keep it going has often been expressed by this court. The question of adverse possession is one, says Judge SCOTT, "compounded of law and fact, and every case in which it is involved must be determined by its own circumstances," depending upon the nature and situation of the land and the uses of which it is capable. *Draper v. Shoot*, 25 Mo. 203; *Leeper v. Baker*, 68 Mo. 402. We may add that it depends much also upon the nature of the claim under which the right to the possession is asserted. The statutory constructive possession of an entire tract which accompanies actual possession of a part would require acts of ownership less specific "than would be required of one who enters without right and retains possession by wrong." In the former only the exercise of "the usual acts of ownership" of the part not actually

possessed is required, while in the latter the possession will not be extended beyond the limits of actual occupancy.  *Bradley v. West*, 60 Mo. 40.

In cases like this, in which possession is taken in good faith, under color of title or claim of right, it is held that to constitute an adverse possession there need not be a fence, building or other improvement made.  "It suffices for this purpose that visible and notorious acts of ownership are exercised over the premises in controversy for the time limited by the statute."  *Draper v. Shoot*, 25 Mo. 203.  It will be observed that this rule requires less to constitute adverse possession than is required of a mere trespasser and more than is required of one in possession of a part under color of title to the whole tract.

All the authorities agree that the acts of possession must be visible and continuous for the requisite period in order to create the bar.  Sedgwick and Wait on Trial of Title to Land, secs. 735, 737.  It is not required that an act of possession should be done every day or month or at any definite intervals, but they should be of such frequency and character as would at all times apprise the owner "that his seizin was interrupted, and that his title may be endangered."  "It would be a new and dangerous doctrine," says HOUGH, J., in *Turner v. Hall*, 60 Mo. 275, "to hold that a possession under color of title may be discontinued after a year, or a month, or a week, and that thereafter the constructive possession of the land would follow the color of title instead of the true title."  Judge BLISS says in *Musick v. Barney*, 49 Mo. 463:  "With the short limitation we have in Missouri, it would endanger property rights to permit a loose claim to land, with such acts of ownership only as might be exercised without attracting the attention of the real owner, and without actual occupation, to ripen into

title." He says further that, "the indications of the claim and possession should be so patent that he (the owner) could not be deceived."

In the cases of *Leeper v. Baker*, 68 Mo. 400, and *Mississippi County v. Vowels*, 101 Mo. 225, the adverse claimant had color of title to the whole tract, and actual possession of a part, and, therefore, constructive possession of the disputed tract, which only required the exercise of such acts as an owner of the whole tract would, under the condition, situation and character of the land, have exercised. R. S. 1889, sec. 6768.

Now, applying these principles to the facts in this case, I am of the opinion that defendant wholly failed to show title by adverse possession to that part of the land in dispute which was inclosed less than ten years before the commencement of the suit. We are able to find in the record but two specific acts of ownership and possession exercised by defendant for the thirty or more years he and his grantors claimed to the Krekel line. In 1871 or 1872 he removed from the land two wagon loads of dead pin oak timber for firewood, a part of which he cut and a part of which had been cut by plaintiff. As to this act defendant testified:

"We got timber once; we was out of firewood, and there was some pin oaks and some timber lying out there. Charlie Goltermann cut that, and I got my hand, and me and him went over there and told him we wanted to get that wood for firewood.

"*Q.* Charlie Goltermann had cut it? *A.* Yes, sir; and we cut some more, so we had two loads.

"*Q.* When was that? *A.* That was in 1872, 1871 or 1872."

Again, in 1876, defendant cut and removed a load of hickory timber for axe handles.

The first instance shows that plaintiff also exer-

cised acts of ownership over the land. Though it did not appear that he then asserted any claim to it, yet this evidence shows that in the great abundance of timber at that time division lines were not regarded in its common use. If the second instance was known to plaintiff, taken alone it could only be regarded as one act of trespass, which was not repeated while the land remained uninclosed. The possession did not have that visible continuity which would divert the constructive possession of the owner. A mere claim to land unaccompanied by possession will not ripen into a title, however long or persistently the claim may be made. An owner is not required to assert or defend his title, so long as his constructive possession is not interrupted.

The fact that plaintiff made his improvements according to the Krekel survey and made no claim to the land south of that line, has no signification further than showing that he had knowledge of defendant's claim and its extent. The title was in plaintiff, and could only be divested by affirmative acts on the part of defendant. *Sherwood v. Baker*, 105 Mo. 477.

I am of the opinion that no evidence of the necessary, continuous and visible adverse possession was shown, and that the judgment should have been for plaintiff for all the land which was inclosed within ten years before the suit was commenced. Judgment reversed and cause remanded; BLACK, C. J., and BRACE, J., dissent. The other judges concur.

BLACK, C. J. (*dissenting*).—The strip of land in suit is three quarters of a mile in length, about four chains wide at the west end, and about one chain wide at the east end. The north line is known in the record as the Krekel line, and was established in 1847 by Surveyor Krekel as the east and west center line of the

section.   The south line is, however, the true east and west center line.   The plaintiff owns land on the north and the defendant on the south.   Their respective title papers call for the east and west center line.   The plaintiff, therefore, has the title and should recover, unless defeated by the ten year statute of limitations.

This suit was commenced on the tenth of February, 1887.   In 1852 the plaintiff's father, through whom he claims, and Knippenberg, through whom the defendant claims, staked out the line along the Krekel survey as the dividing line between their possessions, they then being in possession of their respective farms. Knippenberg and the defendant built a fence on the Krekel line, a half mile in length, beginning at the west end and running east.   This part of the land in question has been in the possession of the defendant and his grantor for much more than ten years before the commencement of this suit, and as to it there can be no doubt but the defendant should prevail.   The real dispute is over the east third in length, containing about three acres.

In 1880 or 1881, the defendant extended his fence east so as to include the three acres, and hence had that part in his inclosure for six or seven years before the commencement of this suit.   The controversy then comes to this, whether there is any evidence of adverse possession by the defendant for the three or four years prior to the last mentioned date.

Besides the facts before stated, as to which there is no dispute, the evidence shows that plaintiff's father built a fence along the three acres ten or fifteen feet north of the Krekel line as far back as 1852.   This strip of ten or fifteen feet in width was left out for the purpose of a road, and was thereafter so used by the plaintiff and his father.

Vol. 125—20

There is evidence that the plaintiff, in 1868, stepped over the Krekel line and cut some trees. When knowledge of this came to his mother, who was in possession of the land now owned by him, she reproved him for cutting trees on other people's land, and he replied that defendant would not care or cry about it. It appears defendant cut several loads of fire wood from the three acres in 1871 or 1872, and in 1876 he cut and sold axe handle timber therefrom. Defendant used the three acres just as he did his timber land on the south. Indeed, the three acres were always deemed and treated as part of his forty-acre timber tract.

Now, I readily concede that the acts of cutting wood at one time and axe handle timber at another time, taken by themselves, do not make out a *prima facie* case of adverse possession. But, in my opinion, they must be taken in connection with the other circumstances, and when this is done there is an abundance of evidence of adverse possession prior to the building of the fence in 1880 or 1881. In the first place, the evidence is clear to the effect that, plaintiff and his father did not claim south of the Krekel line. Their acts and declarations tend to show a disclaimer of even constructive possession south of that line, and a daily admission of the right of the defendant to the possession of all the land south of it. There was, therefore, no conflicting possession or claim of a conflicting character. Each respected the possession of the other up to that line.

It is, no doubt, true that the possession, to constitute a disseizin, must be actual and adverse, and generally it must be so notorious that it may be presumed to have been known to the rightful owner. The reason for the rule that the possession must be notorious is that the true owner may have notice. Where he has actual knowledge of the adverse claim and possession,

the acts of notoriety become unimportant, for actual notice is equal to, if not superior to, presumed notice. This principle has been asserted and applied in several cases in this court. *Dausch v. Crane*, 109 Mo. 336; *Allen v. Mansfield*, 108 Mo. 343; *Key v. Jennings*, 66 Mo. 367. Speaking of this principle, it is said: "If it were proved that the owner of the land had actual notice of the adverse claim, and of some acts of ownership thereunder, it might be sufficient to bar the owner under the statute, though, in the absence of actual notice, such acts of ownership of the adverse claimant would not be held sufficient to constitute an adverse possession." Sedg. & Wait on Trial of Title to Land [2 Ed.], sec. 734.

Now, we have these broad and undisputed facts in this case: The plaintiff and his father never claimed title or possession to any land south of the Krekel line until shortly before the commencement of this suit. The defendant and his grantor always claimed title or possession up to the Krekel line on the south. This claim was known and respected by plaintiff and his father from 1852 down. More than two thirds of the land in dispute was in the inclosures of the defendant for more than ten years before the commencement of this suit. These three acres were, from 1852 down, claimed and used by the defendant just as he claimed and used his other wood land to the south of the three acres, all of which was known to the plaintiff. The acts of possession as to the three acres were the same as to the other timber land owned by the defendant.

My conclusion is that there was evidence of adverse possession of the three acres for many years prior to 1880 or 1881, and, this being so, the judgment should be affirmed. BRACE, J., concurs.