Hedges v. Pollard.

HEDGES et al. v. POLLARD et al., Appellants.

Division One, March 31, 1899.

1. **Ejectment:** ESTOPPEL: STRICKEN OUT. To an action in ejectment defendants pleaded, in the nature of an estoppel, that plaintiffs and their grantors saw defendants erect the dividing fence and made no objection to its location, and that they knew defendants had placed the division fence on the line fixed by the commissioners' plat in a partition suit, and consented and acquiesced therein. *Held,* that, on the authority of Goltermann v. Schiermeyer, 125 Mo. 291, this plea was properly stricken from the answer.

2. ———: LIMITATIONS: NOT PLEADED. Defendant's proof of title by limitations is admissible in ejectment under a general denial.

3. ———: ADVERSE POSSESSION: DIVIDING LINE. Where both parties believed the fence was on the true dividing line and each claimed to that line, unqualified by a subsequent ascertainment of the true line, their possession up to the fence will be held to be adverse.

4. ——: ——: ——: ——: BURDEN OF PROOF. And the bur-
den is on plaintiff to show that the land was held all the time by
defendants subject to a subsequent ascertainment of the true divid-
ing line, and that, therefore, his possession was not adverse.

5. ——: ——: ——: ——: CHARACTER OF PROOF. And where
the possession has lasted more than the statutory period before the
action to oust the possessor is brought, the claim that defendants
only claimed to the true line wherever that might subsequently be
ascertained to be, must be established by clear and unequivocal acts
or admissions within the statutory period of limitation.

*Appeal from Lincoln Circuit Court.*—HON. E. M. HUGHES,
Judge.

REVERSED AND REMANDED.

MARTIN & WOOLFOLK for appellants.

(1) That part of defendants' answer stricken out sets
up a good equitable defense. It shows that the adjoining
owners recognized and acquiesced in the fence as the line
and used the same fence by building to it on the line. Blair
v. Smith, 16 Mo. 273; Dolde v. Vodicka, 49 Mo. 98; Rice v.
Bruce, 49 Mo. 231; Majors v. Rice, 57 Mo. 384; Evans v.
Kunze, 128 Mo. 671; Ersting v. Gleason, 137 Mo. 594.
(2) The court should have sustained defendants' demurrer
to plaintiffs' evidence. Christal v. Craig, 80 Mo. 367.
(3) The reading of defendant Pollard's cross-examination
was improper. If read as an admission the whole should
have been given. 1 Greenl. Ev., secs. 201 and 202,
(4) There is no evidence in the case tending to show that
from 1875 to the commencement of this suit defendants
claimed only to the true line when ascertained. The only
facts which even gave color to such a theory are contorted
statements of plaintiffs' witness of statements made by de-
fendants to the effect that they did not want anything that
did not belong to them or that they would give up the land.
There was no evidence that they did not claim the land as

their own.    Every fact and circumstance shows they did claim it as their own from 1875.    There was but one line known or thought of from 1875 to 1892, and they held to that line under the belief that the land was within the bounds of their own tract and without any purpose or intention of giving it up to any one else.    The facts as to the inclosed land bring the case clearly within the doctrine announced in Cole v. Parker, 70 Mo. 272; Handlin v. McManus, 100 Mo. 124; Blatner v. Baker, 108 Mo. 311, and Goldmann v. Schurmeyer, 111 Mo. 404.    Thus title had already been established by adverse possession long before any dispute or question of the lines arose.

NORTON, AVERY & YOUNG for respondents.

(1)    An examination of the answer fails to disclose that there was even a pretense that the defendants were deceived or misled, or were induced to do, or refrain from doing, anything by reason of anything said or done by plaintiffs.    There is no element of estoppel stated in the answer, and it constituted no defense.    Boles v. Perry, 51 Mo. 449; Goltermann v. Schiermeyer, 125 Mo. 299.    (2)    Defendant Pollard's cross-examination, given in a former trial of the cause, was not read as an admission, but solely in the way of impeachment.    He was asked in his examination, if at the former trial he had not testified to a certain state of facts. In his answer he denied that he had, and his cross-examination was introduced solely for the purpose of contradicting him.    Norris v. Brunswick, 73 Mo. 258; State v. Phillips, 24 Mo. 475.    (3)    Where one of two adjoining land proprietors takes and holds possession up to a fence, which he supposes is on the true line, claiming to the fence, his possession is adverse as to all the land in his inclosure.    Goltermann v. Schiermeyer, 111 Mo. 418; Battner v. Baker, 108 Mo. 315; Cole v. Parker, 70 Mo. 379.    (4)    A simple inclosure, use and occupation of plaintiff's lands for ten years does not show

an adverse possession. Crawford v. Ahrens, 103 Mo.88. Now if they "claimed to be the owners of all the land up to said fence," their claim necessarily rested on the other fact, that they supposed and believed the fence to be on the true line. This fact is one incumbent on them to show, in order that the possession should appear a hostile one.   And the burden of showing this is on the defendants.   Crawford v. Ahrens, 103 Mo. 88; Meier v. Meier, 105 Mo. 431.

.MARSHALL, J.—Ejectment to recover about sixty acres of land in Lincoln county.   The facts sufficiently appear in the opinion.

## I.

This controversy arises out of a difference between the surveys made by F. W. Rohland, in 1846, and by John F. Wilson, made in 1875, and those made by W. G. Seaman in 1890 and by F. D. Brown in 1892, as to the proper dividing line between United States survey 757 in fractional section 18, township 48, range 3 east,and fractional sections 7 and 12 of the same township and range.

If the surveys made in 1846 and 1875 are correct the defendants have title, and if those made in 1890 and 1892 are correct the plaintiffs have title and are entitled to recover unless the defendants have acquired title by limitation.

United States survey 757 was confirmed to Jonathan Woods in 1811.   Prior to his death, in 1846, Ira Cottle had acquired title thereto.   After his death the land was platted and partitioned, and lot 4, containing 960 acres, was set off to Harriet Cottle.   She died some time prior to 1875, and her property was platted and partitioned and lot 1, containing 166.80 acres of this partition, was assigned to L. B. Cottle and R. A. Pollard, and lot 2, containing 351.80 acres, was purchased at the partition sale by the defendants John W. Pollard and L. B. Cottle, and in 1876 the defendant John W. Pollard purchased the interest of R. A. Pollard in lot 1.

Sections 7 and 12 of township 48, range 3 east, which plain-
tiffs own, adjoin survey 757 on the north, and survey 524
adjoins survey 757 on the west, the dividing line beginning
at the Cuivre River and extending on a straight line in a
northwestwardly direction.

Immediately after defendants acquired said lots 1 and 2,
they took possession thereof, fenced it, except about ten or
fifteen acres in the northeast corner which was covered by
a portion of Brown's lake, which was fenced in 1886 or 1887,
and a small triangle at the northwest corner, caused by run-
ning the west line of survey 757 due west from the Cuivre
River and then northwest, instead of towards the northwest
all the way from the river, thereby leaving a triangle be-
tween the west line of survey 757 and the east line of survey
524, no part of which however was in sections 7 and 12, un-
less the north line of survey 757 extended over the south
line of sections 7 and 12. Defendants remained in undis-
puted possession from 1875 to 1892, cultivated all that was
arable and paid taxes on the whole of it. The plaintiffs and
their ancestors lived on their land in sections 7 and 12, saw
defendants erect the dividing fence between their respective
lands in 1875, saw the acts of ownership exercised by defend-
ants over the whole of the land claimed and cultivated by de-
fendants, believed that the land belonged to defendants,
never asserted any claim to it until after the surveys made
by Brown and Seaman in 1890 and in 1892, and then claimed
the sixty acres here in controversy upon the theory that the
Brown and Seaman surveys established the correct dividing
line, instead of those made by Rohland and Wilson, and that
as they and defendants had been claiming only to what they
both believed was the true line, defendant's possession had
never been adverse, and hence they had acquired no title
by limitation. Survey 757 was located and surveyed long
before the lands around it (including sections 7 and 12) were
sectionized. Brown made his plat from notes and not from

surveys, but he did survey the land.   Brown made the survey contain 635 acres, whereas that survey as confirmed to Jonathan Woods contained 640 acres.    All the surveyors seem to have taken the river at the southwest corner of the survey as their initial point.   Brown testified that when he made the survey, in 1892, there were "some indications of banks washing away."    He also said that the "field notes call for east line, 71 chains.   Wilson and Rohland ran it 75 chains, a difference of 4 chains.   Rohland's plat of Ira Cottle partition makes west line 39.64.     I found it to be 34 chains.   This corresponds with distance given on east line.   Wilson's survey followed Rohland's."   Seaman testified to substantially the same thing.   That is, Brown and Seaman make survey 757 four chains shorter from south to north than Rohland and Wilson make it, and Brown says that the field notes of the original survey made by Andrew Finly, called for the east line to be 71 chains, whereas Rohland and Wilson made it 75 chains.   Plaintiffs offered, but afterwards withdrew, the Finly survey, so that there remains only Brown's statement of what it did call for as the length of the east line.   Neither party offered any testimony as to the true southern boundaries of sections 7 and 12, and as the plaintiffs' land lies wholly in those sections they have no title, unless the southern line of those sections and the northern line of survey 757 are coincident.   Nor have they any title to the four chains difference betwen the Rohland and Wilson surveys and those of Seaman and Brown, unless such excess diminishes the land properly belonging to sections 7 and 12. In the absence of such showing, it can not be said, as a matter of law, that the excess belongs to the owners of land in sections 7 and 12, as the court instructed was the legal effect. Defendants may have all the land called for by survey 757, and plaintiffs may have all the land called for by the surveys of sections 7 and 12, and if there are sixty acres intermediate between the true southern lines of sections 7 and 12 and the

true northern line of survey 757, it would not follow, as the lower court held, that they would belong to the plaintiffs and not to the defendants.    It is true that Brown draws the conclusion, from the difference in the surveys, that these sixty acres lie in sections 7 and 12 and not in survey 757, but this is only a conclusion and not testimony of a fact, especially as he does not testify that he ever surveyed sections 7 and 12 or that he knows anything about their true southern line.

However, both parties tried the case below upon the theory that sections 7 and 12 and survey 757 adjoin, and hence this court will treat such to be the fact.

Taking the river at the southwest corner of survey 757 as the initial point, and 34 chains as the proper length of the west line of the government survey, it follows that the Rohland and Wilson surveys which called for 39.64 chains made the west line 5.64 chains too long, and assuming the southern lines of sections 7 and 12 and the northern line of survey 757 to be coincident, it follows that survey 757 overlaps section 7 and 12 at the northwest corner, 5.64 chains.    On the same basis and assumption survey 757 overlaps sections 7 and 12, at the northeast corner, 4 chains.    This is the substantial result of the showing of both parties, and it results that the legal title to this overlapping portion has been and is in the plaintiffs and their grantors and not in defendants.

## II.

The plaintiffs having the legal title are entitled to recover, unless the defendants have acquired title by limitation.    There is no plea of the statute of limitations in the answer.    There was a plea, in the nature of an estoppel, that plaintiffs and their grantors saw defendants erect the dividing fence, and made no objection to its location, and that they knew defendants had placed the division fence on the line fixed by the plat in partition of the Harriet Cottle estate, and consented and acquiesced therein.    This defense

was stricken out on motion of plaintiffs, and defendants ex-
cepted.    The action of the court was in conformity to the
ruling in Goltermann v. Schiermeyer, 125 Mo. 291.    Al-
though there was no proper plea of the statute of limitations,
proof of title by limitation was admissible under the general
denial, because this is an action in ejectment.  [Bird v. Sel-
lers, 113 Mo. l. c. 588, and cases cited.]

The evidence clearly discloses that defendants have
been in possession of all the land in dispute since 1875, ex-
cept what was covered by the lake in the northeast corner,
and the small triangle, of about two acres, in the northwest
corner; have cultivated it, paid taxes on all of it, and ac-
quired or purchased it at the partition sale of the Harriet
Cottle estate as it appeared on the plat of the commissioner
at that sale.    The plaintiffs are not now and never have been
in possession of any part of it.    They and their ancestors
set up no claim to it until 1890, when Seaman made his sur-
vey, or until 1892, when Brown made his survey, and did not
bring this suit until 1894.    The defendants had, therefore,
the open, exclusive, uninterrupted, notorious and continuous
possession of it for at least fifteen or seventeen years before
plaintiffs asserted any claim, and for nineteen years before
this suit was instituted.    It also appears that their possession
was adverse.    They, therefore, had acquired a good title by
limitation.    But plaintiffs invoke the doctrine, recognized
and enforced in this State in Walbrunn v. Ballen, 68 Mo.
l. c. 166, that, "if one, by mistake, inclose the land of another
and claim it as his own, his actual possession will work a dis-
seizen; but if ignorant of the boundary line, he makes a mis-
take in laying his fence, making no claim, however, to the
land up to the fence, but only to the true line as it may be
subsequently ascertained . . . . . his possession is not
adverse."    This doctrine was recognized in this State long
before that decision and has been reaffirmed since.  [Cole
v. Parker, 70 Mo. l. c. 379; Battner v. Baker, 108 Mo. l. c.

315; Goltermann v. Schiermeyer, 111 Mo. l. c. 418.] But as was said by HENRY, J., in Cole v. Parker, *supra*, quoting from the decision in Walbrunn v. Ballen, *supra*. "The remarks in that case are applicable to this: 'He claimed it as his own; he had no thought of yielding possession to a true owner if it was not his land. He had no doubt that it was his, and he took possession under no other view than that it was his. It can not be said that he intended to take and hold the land until it should be determined or ascertained whether it was his or not. No such thought was in his mind. He had one thought, that it was his land, and he would take possession of it and make his improvements,' and it was held that such was an adverse holding." And in Battner v. Baker, *supra*, BLACK, J., after citing Cole v. Parker, said: "The circuit court committed manifest error in the application of these well-settled rules of law. It is true the defendant says he thought the fence was on the true line, and that he claimed to it because he thought it was the true line; but that he claimed to the fence is clearly asserted by him. Besides this, it is agreed that he has been in actual possession, and used as his own all of the ground within his inclosure. . . . . Though he supposed the fence was on the true line, and for that reason claimed up to it, still he at all times claimed to own the land up to that line, and his possession was adverse because of this claim of ownership. The fact that he was mistaken as to the true line is immaterial, when it appears he claimed up to the fence. The case is entirely different from that where a party in possession simply claims to the true line, wherever that shall be acsertained to be." The same learned judge, in Goltermann v. Schiermeyer, *supra*, said: "Where one of two adjoining land proprietors builds a fence upon what he supposes is the true line, and takes possession of the land so inclosed, without claiming or intending to claim beyond the true line, when subsequently ascertained, his possession of a part of his

neighbor's land included in the inclosure is not adverse. [Schad v. Sharp, 95 Mo. 574, and cases cited.]   But, on the other hand, where one of two adjoining land proprietors takes and holds posession up to a fence which he supposes is on the true line claiming to the fence, his possession is adverse as to all land within his inclosure.   In such case it makes no difference  that he was mistaken as to the location of the true line; nor does it make any difference that he did not intend to invade his neighbor's rights.   The fact that he claimed to the fence, not simply to the true line when ascertained, is sufficient and will constitute a disseizin."

Goltermann v. Schiermeyer was again before this court in Banc, in 125 Mo. 291, and these principles were recognized and reaffirmed, although the judgment below was reversed for reasons hereinafter referred to.

Applying this rule to the ultimate facts in this case, it is clear that the defendants were in possession of the land in controversy, with the exceptions herein noted, for more than ten years before the institution of this suit; that they claimed to own up to the fence they erected in 1875 or 1876, and never until after the Seaman survey in 1890, or the Brown survey in 1892, was there any question between them and the plaintiffs or their grantors that they were the legal owners or rightfully in possession.   There never was, during all that time, any act or admission on their part that they only claimed to the  fence in the event it was the true dividing line.   Both parties believed the fence was on the true dividing line and each claimed to that line, unqualified and unlimited by any consideration or contingency or subsequent ascertainment of the true line.   · The evidence shows that after the defendants' title had ripened by limitation, and after the Seaman survey, the plaintiffs claimed the land, and plaintiffs' testimony is to the effect that defendants expressed a willingness to give it up and move the fence to the true dividing line if a survey proved that it was not on the

true line, but that even the plaintiffs were not entirely satisfied that the Seaman survey established the correct line, and they therefore caused it to be resurveyed by Brown, the county surveyor.    The defendants wanted Wilson, who surveyed the land in 1875, and according to which defendants had erected the fence, to go with Brown, but this was not done.    Plaintiffs' testimony also shows that defendants insisted that they were on the right line and that they had always claimed to the fence without regard to whether it was the true line or not, and that before the Brown survey was made the defendants refused to give up the land, although threatened with a lawsuit.    The defendants' testimony was that they never agreed to give up the land but always asserted title to the land up to the fence.

The burden of bringing the case within the exception to the rule of a possession for the period of limitation not being adverse between adjoining owners, because always held subject to a subsequent ascertainment of the true line, was upon the plaintiffs, and must clearly show the existence of such qualified claim to possession at some time prior to the ripening of title by limitation.    Conflicting testimony as to vague or uncertain conversations occurring after the rights of the party in possession had been fixed by possession and limitation, is not sufficient to reduce the character of the possession or to divest rights so acquired.    The policy expressed in statutes of limitation would be practically worthless, if parol testimony was permitted to nullify rights conferred by the statute.    In personal actions promises must be in writing in order to take the case out of the operation of the statute of limitations, and by parity of reasoning the same principle should obtain in real actions.    The reason of the rule as to personal actions is to prevent the possibility of perjury, and the same reason applies with equal cogency to real actions.    True, the rule as to personal actions is statutory, and there is no such statute as to real actions.    But it

is also true that the qualifications upon a statutory right acquired by virtue of the statute of limitations is purely of judicial origin and is a matter of construction, and the only safe rule is for the courts to require clear and unequivocal acts or admissions within the statutory period of limitation. This alone should be deemed a sufficient excuse for not beginning an action within the period limited by the statute. As the evidence fails to bring the case within this rule, and as the case was not tried by the court upon this principle, it follows that the judgment below is erroneous and must be reversed.

## III.

Except for the uncertainty as to the portion in the northeast corner which was covered by the lake which was not inclosed until 1886 or 1887, and the triangle, in the northeast corner, there would be no necessity for remanding the cause.

As was said in Goltermann v. Schiermeyer, 125 Mo. l. c. 300, possession, under our statute (sec. 6768), "under color of title, of a part of a tract, in the name of the whole tract claimed, and exercising during the time of such possession the usual acts of ownership over the whole tract so claimed, shall be deemed, under the statutes of limitation, a possession of the whole of such tract, is not applicable to cases of interfering or lapping surveys forming boundaries between adjacent proprietors." In the case at bar there is no evidence, sufficient to predicate an intelligent opinion upon, that the line, as established by the Seaman and Brown surveys would take in the whole of the ten or fifteen acres in the northeast corner, covered by the lake, or if not, how much it would embrace. The plats before us are not uniform and hence not satisfactory. On one of them the lake seems to extend to the dividing line, while on the other the lake does not extend as far north as the dividing line. We are therefore unable to ascertain the fact as to whether the

true line will take in any, and if so, how much of this part of the premises.    Only the western part of the lake extends over any part of survey 757 or sections 7 and 12 as the true line may decide to which it belongs.    The plaintiffs in no event would be entitled to any more of this unfenced part than lies north of the Seaman and Brown line.    The same remarks apply in perhaps a qualified degree, to the triangle in the northwest corner.    For these reasons the cause is remanded to the end that the plaintiffs may be given an opportunity to make clearer proof with respect to their right to recover the whole or some part of these two tracts, to which the defendants have not acquired title by limitation.    It is so ordered.    All concur.