MARSHALL, J.
Ejectment to recover possession of tbe eastern half of lot No. 1 of block No. 107 of Harlem addition to tbe city of St. Louis, in City Block No. 3465, having a front of 37 feet and 6 inches on tbe north side of Pope avenue.
Frederick Holste owned lots 1 and 2 of block 107 aforesaid. Lot 1 was shown on tbe plat of tbe addition to contain 73 feet and 2 inches front on tbe north side of Pope avenue, *551 by a depth of 145 feet 4 1-2 inches on the east side of Third street; and lot 2 was shown on the plat to contain fifty feet on the north side of Pope avenue by a depth northwardly of 145 feet; and the plat showed lot 2 to lie east of lot 1. Holste sold lot 1 to James P. Kennedy in 1875, and on December 1st, 1882, Kennedy sold the east half of lot 1 to Henry Steinmeyer. On July 20th, 1883, Steinmeyer conveyed said east half of lot 1 to Mary Pieper, then the wife of Conrad Pieper, but since his death intermarried with Charles Elynn.
On October 9th, 1875, Holste sold lot 2 to Perry Gosey, and in March, 1882, Gosey conveyed said lot 2 to Louisa Wacker, the wife of the defendant.
None of the parties had any surveys made of the lots. The streets were not made or visible on the face of the land. The surrounding country was not built up. Kennedy took possession of what he supposed was lot 1 and Gosey took possession of what he supposed was lot 2. They built a division fence on what they believed to be the true division line, and dug a well on that line to supply both with water. When Wacker bought from Gosey, in 1882, Holste went to the place with Wacker and, pointing to the division fence, said to Wacker, “Erom that fence fifty feet east is your lot.” Wacker took possession of the fifty feet thus pointed out, improved it and has been in possession of it ever since, and was in possession on January 14th, 1895, when this suit was instituted. In 1893 Elynn had a survey made, by which it appears that the division fence was not placed upon the true dividing line, but was placed about 25 feet too far west. This was occasioned by a mistake as to the true- eastern line of Third street. Kennedy started too far west to measure his 73 feet and 2 inches, hence Gosey, owning lot 2, which lay east of lot 1, located his west line as much onto lot 1 as Kennedy located his west line onto Third street. The survey made in 1893 shows that starting from a stone in Hall street (the street nest east of Third street) and measuring west *552 775 feet and 2 inches the true eastern line of Third street is established. The plat of block 107 of Harlem addition calls for 14 lots of fifty feet each and one lot of 73 feet and 2 inches. So that there is in reality about two feet more land in block 107, lying between Third and Hall street, than the plat calls for. In other words, if each of these parties and the owners ■of all the other lots in block 107 were placed on their proper lots, each would have all he bought or is entitled to. The whole trouble arises from the fact that Kennedy and Gosey made a mistake as to the true location of lots 1 and 2. They acted without the aid of a surveyor and the usual mistake followed — a lawsuit as to the true division line. No question, however, arose while Kennedy and Gosey were the owners, nor from 1882 when defendant bought the property and commenced to improve it until after Elynn had the survey made in 1893. Then having discovered the mistake in locating lots 1 and 2, and realizing that the parties had improperly located their lots, he tried to convince Waeker of the mistake, and failing to do so, he pulled down the division fence and took the necessary number of feet lying east thereof to make up his half of lot 1. Waeker brought forcible entry ' and detainer, ousted Elynn, regained possession and replaced the fence on the old line. Thereupon Flynn instituted this action in ejectment. The answer is a general denial and a plea of the statute of limitations.
The case was tried by the court, without the aid of a jury, and the facts stated were developed. The defendant claimed that he had taken possession of the specific fifty feet that lay east of the division fence that Kennedy and Gósey had put up and which Holste pointed out to him, and that he had been in open, notorious, visible, continuous and adverse possession thereof for more than ten years before the beginning ■of this action, claiming it specifically and not subject to any future ascertainment of any true line, and hence that he had acquired title by limitation.
*553 After testifying to this effect on direct and cross-examination, the court asked Wacker the following questions and ■he replied as follows:
“Q. I understand, Mr. Wacker, that when yon built your house and found that fence that Mr. Holste pointed out to you, you supposed that to be the dividing line between your lot and Mrs. Boehmer’s lot? A. Yes, sir.
“Q. That is what you supposed ? A. Yes, sir.
“Q. But you had no survey made to ascertain whether that was correct or not? A. No, sir.
“Q. You just took into your possession fifty feet from that fence? A. Yes, sir.
“Q. And fenced it up on the east side ? A. Yes, sir.
“Q. And after that time you say you had it rented? A. Yes, sir.
“Q. I suppose you had no intention of taking anybody else’s land, excepting your own, had you? A. No, sir.”
The court of its own motion then instructed as follows:
“If the court, sitting as a jury, finds from the evidence that the plaintiff, Mary Elynn, and the persons under whom she claims title, and the defendants William Wacker and William Smith, and thg persons under whom they claim title were respectively the owners of adjacent tracts of land, in block No. 107, of Harlem addition, now in the city of St. Louis, fronting on the north line of Pope avenue; and that the plaintiff, Mary Elynn, and her grantors owned the east half of lot No. 1 in said block, and those under whom the defendants claim owned lot No. 2 of said block, and if the court sitting as a jury further believes from the evidence that the •plaintiffs and the defendants, and those under whom they respectively claim title, in ignorance of the true dividing line between the same, occupied the adjoining tracts of land, or portions thereof, above mentioned, up to a fence erected between the parcels respectively occupied by them; and that the parties so in possession supposed this fence to be the true *554 dividing line between said two tracts or lots of land; and if the Court further believes from the evidence that said parties in the occupation of their respective adjoining tracts of land supposed themselves to be in occupation up to the true-dividing line between said tracts, and that neither of - them intended to claim any land not included in their respective-deeds, but that they intended to claim only to the true line between said lots, then such occupation was not adverse, and could not xdpen into a title in favor of either party, beyond the true dividing line between said two tracts of land, when the same was discovered.”
To which action and ruling of the court in giving said instruction the defendant duly excepted.
The defendants asked and the court gave the following instructions:
“1. The Court declares the law to be that if defendant, Louisa Wacker, or any -person under whom she claimed, went on and occupied the land in dispute, and built a fence between that land and the land west of it, and the land she occupied was fenced on the north and south lines, and in part on the east, and thereafter she remained and was in open, notorious, continuous and visible occupation of the same for ten years, claiming to own said land up to said fence, on the west, and within the other three lines of fence-, plaintiff cannot recover in this action. And the Court further declares that if such occupation existed, it did not -cease to be continuous because plaintiff forcibly entered on said land, and remained in possession until evicted by the constable under a. proceeding of forcible entry and detainer.
“2. If the Court, sitting as a jury, believe from the-evidence that defendant or those under whom he claims title, or any of them, held open, notorious and visible and adverse and continuous possession of the premises in question for a period of ten years, claiming to own the same, and that said period ended within ten years prior to the institution of this *555 suit, and. tliat the conveyances offered in evidence by the defendants are genuine, then plaintiffs are not entitled to recover.
“3. The Court further declares that although the plaintiff may within said period of -ten years, have forcibly entered into possession of said premises, yet if defendant or anyone claiming’ under him, within a reasonable time after such forcible entry, instituted proceedings against plaintiffs, ■or either of them, for the recovery of said preinises, and under such proceedings was put in possession thereof, the character of the possession of defendant is not affected by such forcible taking or retention of possession by plaintiffs or either of them.
“4. The Court declares the law to be, that if defendant, ■or any person under whom he claimed, went on the premises in question and placed fence posts around the boundaries of the lot claimed by plaintiff, then these acts of defendant constituted open, visible and notorious possession, and so continued to be, so long as such fence posts remained in place, visible, above the surface of the ground.”
The Court entered judgment for plaintiffs for possession, and $150 damages and assessed the rents and profits at $8 a month. By proper steps the defendant appealed to this ■court.
I.
It is plain that the judgment of the circuit court was predicated upon the proposition of law contained in the instruction given by the court of its own motion, that possession up to the fence, believing it to be the true dividing line, intending to claim a right to only such property as their respective deeds entitled the parties to, and holding the possession subject to a future ascertainment of the true dividing line, is not such an adverse possession as will support a claim ■of title by limitation. The correctness of this proposition, in the abstract, is not questioned here, nor is it necessary to *556 review it, for it has been so recently considered and decided' by this court in Brummell v. Harris 148 Mo. 430, and Hedges v. Pollard, 149 Mo. 216, that no more need be said here than was said in those cases.
It is seriously contended, however, that there is no evidence in this case which authorized the giving of that instruction, and, a fortiori, none upon which the judgment rendered on that theory can be supported, and this is the only question urged by appellant on this appeal.
Respondents, however, invoke the doctrine that in cases at law, this court will not disturb the finding of a jury, or of' a court sitting as a jury, upon a contested question of fact. Understanding the word “contest” to mean that a conflict of testimony is shown by the record, the contention is correct. [Pitts v. Sheriff, 108 Mo. 110 ; Schnare v. Austin, 106 Mo. 610 ; James v. Ins. Co., 148 Mo. 1.]
But this must not be mistaken into supposing that a verdict or finding can be allowed to stand unless there is some substantial evidence to support it, or as the converse of the proposition was stated in James v. Ins. Co., supra, “a case will not be reversed unless there is no evidence tending to-establish the fact found by the jury,” citing a great number of cases.
The only evidence that has been pointed out, that we have found in the record, as affording a basis for the instruction or judgment, is the testimony of the defendant, in answer to the questions of the court, which is quoted in full above, and the last question and answer is all that can be fairly said to bear on the principle involved, i. e.: “Q. I suppose you had no intention of taking anybody else’s land,, excepting your own, had you? A. No, sir.”
When this question and answer is taken in connection-with the whole testimony of the defendant, that Holste pointed out the land when defendant purchased it and said r “From that fence fifty feet east is your lot,” and when it is *557 ■further considered in connection with the testimony of the defendant on direct examination and on cross-examination that he claimed to the division fence which the grantors of the parties to this suit had put up on what they agreed was the true dividing line, and that for nearly twelve years the ■defendant had occupied the land he first took possession of ■and had improved it, and steadfastly refused to admit that the plaintiff or anyone else was entitled to disturb him, even after he was informed of the result of the survey made in 1893 (11 years after his possession began), and that he promptly defended his possession by instituting a forcible entry and detainer proceeding when the plaintiff tore down the fence, it can not be said that this question and answer establishes the principle announced in the instruction given by the court of its own motion or affords any substantial ground upon which to rest a judgment in ejectment against a defendant who had been in open, notorious, continuous and visible possession for more than ten years before the ejectment suit was begun, nor that it reduces what the acts of the defendant and the circumstances of the case would, otherwise, clearly show to be an adverse possession, into a holding subject to a future ascertainment of the true line.
The question, literally construed, asks only for his intention in “taking” — not in holding — the land. It lacks another essential element necessary to support the instruction, that the ■defendant took and held or took or held the land subject to its being afterwards ascertained to be his by right of a legal conveyance, and of his claiming to the fence only if that proved to be the true line, and not claiming to the fence absolutely whether it was the true line or not. In short, give the question its fullest possible significance, and concede that it was understood by the witness in the sense it was asked by the Court, and still it falls short of bringing the case within the rule expressed in the instruction given or of taking the ease out of the bar of the statute of limitations, where without this *558 one question and answer all the evidence deduced in the case by both sides clearly placed it.
The fact that there is land enough for all in block 107, and that shoving the defendant about twenty-five feet further east, will still leave him fifty feet, if he can succeed in shoving his next neighbor to the east of him that much further east, and so on for seven hundred feet to TIall street, can not and should not influence or control the decision in this case. For such ruling would only produce more litigation, the result of which no one can foresee, for the benefit of the plaintiffs who have only themselves to blame for sleeping on their rights until the statute of limitation has barred them.
Regarded as a division line settled by agreement this case falls within the rule laid down in Brummell v. Harris, supra, and regarded as a case of claiming to a- particular fence, without respect to whether it is on the true dividing line or not, it falls within the lines of Hedges v. Pollard, supra.
In any event it is a case where there is no evidence to support the judgment or to authorize the instruction given. It is not a case of conflicting testimony where the verdict or finding of the trial court will not be disturbed by this court. It is a case where the only question is whether conceding all that is claimed the judgment below can be sustained.
We fail to find any support in the facts for the instruction or the judgment and therefore reverse the case.
All concur.