# LEMMONS et al. v. McKINNEY et ux., Appellants.

### Division One, May 14, 1901.

1. **Ejectment**: TITLE IN WIFE: HUSBAND'S STATEMENTS. Loose conversations made by the husband as to whether his wife claimed a certain strip of land embraced in a deed to her, do not affect her title or right thereto.

2. ———: ———: ———: ADVERSE POSSESSION: MATURED RIGHT. Where the wife's right to the strip of land has become matured by an open, continuous adverse possession for sixteen years, any statement made by her husband after that time as to whether she held adversely or otherwise, could not have the effect to divest her title already perfected.

3. ———: LINE TO BE ASCERTAINED: MATURED RIGHT: BURDEN. Where the possession under an apparent claim of ownership, up to a line agreed upon by the adjoining owners, has been held for the period covered by the statute of limitations, the burden is on the opposite party to show that the holding was subject to future ascertainment of the true line.

4. ———: ———: NO EVIDENCE. The adjoining owners, one of whom had made the deed to the tract under which the other holds, with a surveyor's chain measured the land, and agreed upon the dividing line, and planted a hedge thereon, and each thereafter respectively held and cultivated up to that line. *Held*, that there is nothing in this evidence to indicate that either held up to the line agreed upon under an understanding that the true line should thereafter be ascertained.

Appeal from Saline Circuit Court.—*Hon. Richard Field,* Judge.

REVERSED.

Lemmons v. McKinney.

*A. F. Rector* and *Robt. M. Reynolds* for appellants.

(1) This is not a case where the line was unknown but the line had been agreed upon, fixed and marked with a hedge by the owners of both tracts, and when this is done, followed by possession, the agreed line becomes the true line and can not be changed. Flynn v. Walker, 151 Mo. 550; Hedges v. Pollard, 149 Mo. 225; Brummell v. Harris, 148 Mo. 431. (2) When a claimant in possession of land claims to be the owner of all said land up to a certain boundary or fence, without reference to whether the same is the true line between his land and the adjoining proprietor's or not, and remains in possession making such claim for the statutory period, he gets a good title to all of the land to the fence by the statute of limitations. Flynn v. Walker, 151 Mo. 550; Hedges v. Pollard, 149 Mo. 225. (3) But when a party in possession simply claims to a certain fence or boundary, aiming simply to claim to the true line or holds subject to the ascertainment of the true line in the future, such possession is not adverse. Flynn v. Walker, 151 Mo. 550; Hedges v. Pollard, 149 Mo. 225. (4) The burden of proof is upon the plaintiff to show by a preponderance of evidence, where the holding has been for the statutory period, that the same was not adverse, but was being held subject to the future ascertainment of the line and the existence of such qualified claim to possession must be clearly shown at some time prior to the ripening of title by limitation. Flynn v. Walker, 151 Mo. 550; Hedges v. Pollard, 149 Mo. 225. (5) Conflicting testimony as to vague or uncertain conversations, occurring after the rights of the party in possession had been fixed by possession and limitations, is not sufficient to reduce the character of the possession or to divest rights so acquired. Flynn v. Walker, 151 Mo. 550; Hedges v. Pollard, 149 Mo. 225. (6) Possession and use are evidence that there

was an agreement to establish the line and it is only necessary that such possession or use continue long enough to indicate what was the understanding of the adjacent landowners. Brummell v. Harris, 148 Mo. 431.

*Duggins & Rainey* for respondents.

(1) The evidence is conflicting as to whether the defendants ever claimed the land in controversy, adversely to the plaintiffs. The verdict of the jury is conclusive on this point and the appellate court will not disturb the judgment on that ground. Pitts v. Sheriff, 108 Mo. 110; Flynn v. Walker, 151 Mo. 552; James v. Ins. Co., 148 Mo. 1; Fulkerson v. Long, 63 Mo. App. 268. (2) Where the lands of two adjoining proprietors are divided by a fence, which they suppose to be the true line, and each claims only to the true line, they are not bound by the supposed line and must conform to the true line when ascertained. Krider v. Milner, 99 Mo. 145; Pharis v. Jones, 122 Mo. 125; McWilliams v. Samuel, 123 Mo. 659; Jacobs v. Moseley, 91 Mo. 457. (3) In the absence of an intention to claim adversely, the presumption is that the occupant holds, and intends to hold, only to the true line, wherever that may be. Turner v. Kellogg, 49 Mo. 118; Brummell v. Harris, 148 Mo. 445.

VALLIANT, J.—This is a suit in ejectment for a strip of land containing about four acres; it arises out of a disputed boundary between the adjoining lands of plaintiffs and defendant Martha McKinney.

R. M. Lemmons, now deceased, was the common source of title. In 1881, he being the owner of a tract of 175 acres, made a deed conveying to his son, the plaintiff, A. K. Lemmons, a part of it, which he described in the deed as follows:

"Twenty-three acres off the north end of the east half of the southwest quarter and twenty-three acres off the north end of the west half of the southeast quarter, also commencing fifty-five yards south of the northwest corner of the northeast quarter of the southwest quarter running one hundred yards east, thence south thirty-five rods, thence west one hundred yards until it intersects the line of said east half of the southwest quarter and west half of the southeast quarter, containing fifty acres; all in section 7," etc.

Shortly after the execution of that deed, in September, 1881, A. K. Lemmons, the grantee therein, sold the land to H. H. Brown by deed with the same description. Directly after Brown's purchase he and R. M. Lemmons, the father of the plaintiffs, and the then owner of the rest of the tract, went together and measured off the land they understood to be covered by the deed from R. M. Lemmons to his son, and the deed from the son to Brown. Brown at that time was sixty years old and Lemmons as old or perhaps older. The two did the work themselves of measuring the land, using a surveyor's chain, taking certain stones which they recognized as monuments, and running the lines and making measurements, established the boundary to their mutual satisfaction, and agreed that in the spring following they would plant a hedge on the line so laid off, and this they did, Brown planting one-half and Lemmons the other half, and that hedge was standing at the date of the trial. Within two months from the date of his deed, that is in November, 1881, Brown took possession of the land so measured off to him by putting his son-in-law and daughter, the defendants herein, in occupancy of it, and they have occupied it continuously ever since, cultivating the land up to the hedge and treating the hedge as the boundary of their land. In 1892, after the death of Brown, the land contained in his purchase under the above named deeds was, in a deed

of settlement among his heirs, conveyed to his daughter, the defendant Martha McKinney.

After the transactions above mentioned, R. M. Lemmons made a deed conveying the remainder of his original 175-acre tract to his daughter, Charity M. Lemmons. She died in 1898; the plaintiffs are her brothers and sisters and heirs, and claim as such under the deed from their father to her. R. M. Lemmons died about 1890. In 1897 Charity Lemmons had a survey of the land made by F. H. Boyd, the county surveyor, and according to the testimony of plaintiffs' witnesses the survey showed that the true line, to mark off fifty acres as called for by the deed to Brown, runs sixty-six feet north of the hedge, and that strip of sixty-six feet is the subject of this suit.

On the part of defendants the testimony tended to show that they had been in continuous, open, adverse possession for sixteen years or more, claiming the land up to the hedge, and the only testimony of the plaintiffs which is claimed to be to the contrary was that in rebuttal tending to show that Willis McKinney, the husband of Martha McKinney, just before the Boyd survey, had spoken of having a survey made to ascertain the true line, and that upon the occasion of the Boyd survey had said that his deed called for fifty acres, and if the survey left him fifty acres he would be satisfied; that the strip between the hedge and the line run by Boyd was not his and he did not want it, and that it was not until after a neighbor had suggested to him that they had been in possession too long to permit any one to question their right, that he disputed the correctness of the survey.

A witness for plaintiff also testified that in a conversation with Mr. and Mrs. McKinney about the strip marked off by the Boyd survey, the witness told them that their deed was for fifty acres and if they got this four acres they would have more

Vol 162 mo—34

than their deed called for, "they said they did not know whether that was their land or not until they knew whether the survey was right or not." As to the alleged survey contemplated by McKinney, the plaintiffs' testimony left it in doubt whether he was talking about running the line in question, or a line between him and his neighbor on the east, about which there was some question. This rebuttal testimony was contradicted by testimony for defendants.

The cause was submitted to the jury under instructions which appear to have been lost out of the papers, and therefore are not in this record. The verdict was for the plaintiffs, and judgment followed, from which this appeal was duly taken.

As the instructions are not before us we do not know upon what theory the case was given to the jury. In this condition of the record, the judgment would be affirmed if there was evidence to sustain the verdict.

The respondents in their brief contend that the evidence was conflicting as to the character of the possession of defendants, that is, as to whether it was adverse to plaintiffs' title. But we perceive no such conflict. In the first place, the land does not belong to McKinney, but to his wife. He could not destroy her title even by his solemn deed, and much less could he impair it by his loose talk. And secondly, these alleged conversations occurred in 1897, long after the title of Mrs. McKinney had matured by adverse possession. Even if what he might have said before could have affected his wife's title, it could not have the effect to divest a title already perfected. [Hedges v. Pollard, 149 Mo. 216.]

Respondents also present the proposition that, where proprietors of adjoining lands have a dividing fence which both suppose to be on the line, but neither claims more than to the true line, and occupies to the fence only subject to the future

ascertainment of its proper location, possession under such condition is not adverse.   That is a correct proposition and is supported by the decisions cited by the learned counsel. [Jacobs v. Mosely, 91 Mo. 457; Krider v. Milner, 99 Mo. 145; Pharis v. Jones, 122 Mo. 125; McWilliams v. Samuel, 123 Mo. 659.] But when the possession up to the fence, under an apparent claim of ownership, has been held for the period covered by the statute of limitations, the burden is on the plaintiff to show that the holding was subject to future ascertainment of the true line. [Hedges v. Pollard, supra.]

If the case was given to the jury under instructions that authorized a verdict for the plaintiffs on the theory that the hedge was only to mark the boundary until the true line should be ascertained, there was nothing in the evidence to justify the submission of such a theory.   When Mr. Brown purchased, he and the plaintiffs' father went about laying off the land called for by the deed with deliberation.   The deed itself gave no distances or metes and bounds except those of the four acres in the northwest quarter of the southeast quarter of section seven. As to forty-six of the fifty acres called for, the only description in the deed was "twenty-three acres off the north end of the east half of the southwest quarter and twenty-three acres off the north end of the west half of the southeast quarter."   This was a deed from a father to a son, and it seems no measuring off accompanied the execution of the deed, but when the son sold to Brown and the land was no longer in the family, then the ascertainment of the boundary line appears from their conduct to have been deemed necessary by the two adjoining owners. And with that object in view they went together and with a surveyor's chain measured the land and established the line to their own satisfaction and each thereafter, respectively, held

and cultivated up to that line. There is nothing in the evidence to indicate that either contemplated that a more technical survey should be thereafter had, or that either of them desired anything more accurate. They were dealing with their own and had a right to agree upon the line and their agreement did not depend for its validity upon the line being technically true. Under such circumstances this court has said: "Then when the line is drawn and the possession is taken the deed is accomplished, and each owns up to the line as fully as if it were a natural boundary and their respective deeds called for it." [Brummell v. Harris, 148 Mo. 430.] And in the same opinion it is said that possession and use up to such line is evidence of such an agreement.

If further evidence that they intended this to be the permanent line between them were needed it is furnished in the fact that when they laid it out they then and there agreed to plant and in the spring did plant each one-half a hedge upon it which has endured longer than the lives of both of them. No subsequent survey could change that boundary. There is nothing in the evidence upon which a verdict for the plaintiff could be sustained.

The judgment of the circuit court is therefore reversed. All concur.