L. D. and L. H. DAVIS, Appellants, v. BRASWELL.

Division Two, December 24, 1904.

1. **EJECTMENT: Division Line: Limitation: Intention.** Where one of two adjoining landowners claims that the line between them as established by a surveyor is the true line, and puts a fence on that line and for 27 years occupies and cultivates up to that line, and states to others that it is the true line, his intention to claim to that line is established by these facts, and the land is his by the statute of limitations. The fact that he said he did not want his neighbor's land, when all the time he was claiming that the strip in dispute was not his neighbor's, did not affect his adverse possession.

2. ———: **Adverse Possession: Pleading.** The defense of adverse possession can be made under a general denial.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*A. H. Livingston* for appellants.

That respondent never intended to claim beyond the true line is made clear as can be by his own evidence. That he believed the Simpson survey to be the true line is conceded. Appellants thought likewise, but neither party ever thought of claiming beyond the true line. Such possession can never be adverse. Appellants' refused instruction is based on authorities as old as the law, and on Missouri cases from the beginning to the end. The correctness of the rule of law therein stated is beyond question or cavil and should have been given. Patton v. Smith, 171 Mo. 231; Brummell v. Harris, 148 Mo. 430; McCabe v. Bruere, 153 Mo. 1; McWilliams v. Samuel, 123 Mo. 659; Ernstine v. Gleason, 177 Mo. 595; Schad v. Sharp, 95 Mo. 573; Jacobs v. Moseley, 91 Mo. 457; Krider v. Milner, 99 Mo. 145; Skinker v. Haagsna, 99 Mo. 208.

*Couch & Brooks* and *T. J. Braswell* for respondent.

The burden of bringing the case within the exceptions to the rule of a possession for the period of limitations not being adverse between adjoining owners, because always held subject to a subsequent ascertainment of the true line, was upon the plaintiffs and must clearly show the existence of such qualified claim to possession at some time prior to the ripening of title by limitation. Conflicting testimony as to vague or uncertain conversations occurring after the rights of the party in possession had been fixed by possession and limitation, is not sufficient to reduce the character

of the possession or divest rights so acquired. Hedges v. Pollard, 149 Mo. 216.

GANTT, P. J.—This is an ejectment for a strip of land in Oregon county. The strip is 126 links wide at the north end narrowing to a point at the south end, off of the west side of lots 1, 2 and 3 of the northeast quarter of section 1, township 22, range 4, west of the 5th principal meridian in Oregon county.

This action was commenced on the 17th day of July, 1901. The petition is in the statutory and usual form. The ouster is laid as of March, 1901. The answer is a general denial.

The controversy is over a division line. Plaintiffs are admitted to have the legal title to the west half of lots 1, 2 and 3 of the northeast quarter of section 1, township 22, range 4 west, and defendant is the owner of the lands east of said lands.

The cause was tried to the court sitting as a jury, a jury having been waived, and a verdict and judgment rendered for the defendant. The controversy as usual grew out of conflicting surveys. The first survey was made by T. M. Simpson, the then county surveyor of Oregon county, in 1870. The survey out of which this action originated was made in 1897 by Wade Heiskill, the county surveyor. The court found and declared that the survey made by Heiskill in 1897 was the true line between the lands of plaintiffs and defendant, but found that defendant had title to the strip in controversy by virtue of the statute of limitations.

For the plaintiff the court declared the law to be that:

"If defendant only intended to claim and hold the land actually covered by his deed and no more, then his possession could not be adverse to plaintiffs, although he believed the Simpson survey gave the line correctly as called for in the deed.

"That although defendant believed the Simpson

line to be the correct one, yet, unless he held the land up to such line intending to hold it regardless of the actual or true line, then his possession was not adverse to plaintiff's and the finding will be for plaintiff.''

Another declaration of law was prayed by the plaintiff as follows:

"If the court, sitting as a jury, finds from the evidence that the plaintiffs and defendant were respectively owners of adjacent tracts of land in section 1, township 22, range 4, and in ignorance of the true dividing line between the same, occupied the adjoining tracts of land, or portion thereof, up to a line run by Simpson, and that defendant had built a fence on such line, and that the parties plaintiff and defendant supposed and believed such line to be the true dividing line between said two tracts of land, and if the court further believes from the evidence that said parties, in the occupation of their respective adjoining tracts of land, supposed themselves to be in occupation up to the true dividing line between such tracts, and that neither of them intended to claim any land not included in their respective deeds, but that they intended to claim only to the true line between them, then the admitted occupancy by defendant for more than ten years before the institution of this suit was not adverse to plaintiffs and could not ripen into title in favor of defendant beyond the true dividing line between the tracts, when the same was discovered, and the finding will be for plaintiffs.''

This instruction was refused, and plaintiffs duly excepted.

The evidence tends in substance to show that almost immediately after the survey by Simpson in 1870, twenty-seven years before the Heiskill survey, the defendant cleared off the timber and built his fence on the line marked out by Simpson for the west line of lots 1, 2 and 3 of the northeast quarter of section 1, township 22, range 4; that from that time on he and his

tenants occupied and cultivated the land on his side up to said fence; that from that time until the day of the trial the defendant claimed this Simpson line was the true line and had the land under fence and in cultivation up to that line on his side thereof. He testified that he never thought of letting any man succeed him in the ownership of this strip, as he believed the Simpson line was right; that he claimed to that line all this time. When the Davises purchased they cleared up to the fence he put there, and made no claim to this strip until after the survey in 1897 by Heiskill.

Fount Fry testified that he was present when the Simpson survey was made and that L. H. Davis was present and Simpson remarked to L. H. Davis, "Uncle L. H., I want you to be satisfied on this," and L. H. Davis said, "I am satisfied; I can not help but be, for you got them witness trees that no other man had ever been at; you are bound to be correct." L. H. Davis testified, "He considered Simpson run the true line." He supposed it was the true line until Heiskill run his line.

After the Heiskill line was run, L. H. Davis had a conversation with defendant, Braswell, about the difference in the lines. He says, "There wasn't much dispute until he notified me." I said, "Braswell, I care nothing for that land at all. I don't want to be bothered with it; six feet will do you and me directly." To Staggs, who seems to have been defendant's tenant, he said, "Do you go on and live in that house, I will not throw you out; you go on and live in that house and tend that land for Braswell, I will not throw you out." That Braswell didn't claim beyond the true line.

Pritchett testified that Braswell claimed to the true line, but he always claimed the Simpson line was the true line.

Oliver says Braswell claimed the Simpson line was the true line, and claimed up to that.

Heiskill says Braswell did not believe his line was right, but that Simpson's was.

Under this state of the evidence plaintiffs insist that there was no evidence that defendant ever claimed anything save up to the true line wherever that might be. We think otherwise.

In Goltermann v. Schiermeyer, 111 Mo. l. c. 418, Judge BLACK, speaking for the Court in Banc, said: "Where one of two adjoining land proprietors builds a fence upon what he supposes is the true line, and takes possession of the land so inclosed, without claiming or intending to claim beyond the true line when subsequently ascertained, his possession of a part of his neighbor's land included in the inclosure is not adverse. [Schad v. Sharp, 95 Mo. 574, and cases cited.] But, on the other hand, where one of two adjoining land proprietors takes and holds possession up to a fence which he supposes is on the true line, claiming to the fence, his possession is adverse as to all the land within his inclosure. In such case it makes no difference that he was mistaken as to the location of the true line; nor does it make any difference that he did not intend to invade his neighbor's rights. The fact that he claimed to the fence, not simply to the true line when ascertained, is sufficient and will constitute a disseizin." [Cole v. Parker, 70 Mo. 377; Handlan v. McManus, 100 Mo. 124; Battner v. Baker, 108 Mo. 311.]

In the case last cited, the language of this court is strikingly applicable to the facts of this case. In that case it was said: "The circuit court committed manifest error in the application of these well-settled rules of law. It is true the defendant says he thought the fence was on the true line, and that he claimed to it because he thought it was the true line; *but that he claimed* to the fence is clearly asserted by him. Besides this, it is agreed that he has been in actual possession, and has used as his own all of the ground within his inclosure. . . . Though he supposed the fence

was on the true line, and for that reason claimed up to it, still, he at all times claimed to own the land up to that line, and his possession was adverse because of this claim of ownership. The fact that he was mistaken as to the true line is immaterial when it appears he claimed up to the fence. The case is entirely different from that where a party in possession simply claims to the true line, wherever that shall be ascertained to be."

These cases were expressly approved in Hedges v. Pollard, 149 Mo. l. c. 224 and 225. The doctrine of those cases must govern this. There was ample evidence that the defendant for twenty-seven years claimed up to this fence. He always maintained the Simpson line was the correct line. He cleared the land and built a house on the disputed strip and claimed up to that line. He did this openly and notoriously with full knowledge of the plaintiffs. The mere fact that he said he did not want his neighbor's land, when at all times he was claiming this was not his neighbor's, did not affect his adverse possession. He could make this defense under his general denial. [Hedges v. Pollard, 149 Mo. 226.].

The three instructions given on behalf of plaintiffs covered every proposition in the case and were as favorable as plaintiffs could ask and there was no error in refusing the fourth instruction which was but another way of stating what had already been said in the others. [Shotwell v. Gordon, 121 Mo. l. c. 484 and 485.]

We think the finding for the defendant was justified by the evidence and as the declarations of law were correct, there is no reversible error in the record, and the judgment must be affirmed and it is so ordered.

*Fox, J.,* concurs; *Burgess, J.,* absent.