GEORGE W. DIERS and BLANCHE DIERS, Appel-
    lants, v. IDA F. PETERSON and SYLVESTER P.
    PETERSON.

Division Two, November 19, 1921.

1. **BOUNDARY LINE**: Retaining Wall: Acquiescence.  The building
   of a retaining wall between two lots, on a line with stakes mark-
   ing the corners and with a mark in the curbstone, is tantamount
   to a claim of ownership; and occupancy of one of the lots up to
   and including the wall by its owners for fifteen years, with the
   acquiescence of the then owner of the other lot, places the burden on
   the present owners of said other lot to show that possession of the
   land covered by the wall was subject to future ascertainment of
   the true line.

2. ———: ———: ———: **Evidence of Agreed Line.**  Where there
   is no evidence of the establishment of an agreed line between two
   lots, the possession and use of the lots on each side of a retain-
   ing wall, constructed on the supposed line, by the respective
   owners thereof for a long time, are evidence that the wall was
   an agreed boundary, and it is only necessary that such possession
   and use continue long enough to show that the respective owners
   knew the true boundary between their lots.

3. ———: ———: **Adverse Possession: Mistake: Intention.**  If the
   owner of a lot, by mistake and in ignorance of the true boundary,
   in building a retaining wall upon the supposed line encroached
   upon his neighbor's lot and he had no intention of taking what
   did not belong to him, the fact that he may have enclosed a larger
   area than his deed called for would not destroy the adverse char-
   acter of his possession, if his intention was to claim and hold to
   the outside face of the wall.  But if he built the wall along and
   upon what he believed was the true line and intended to claim
   only to the true line, then his possession of so much of the ad-
   joining lot as was by mistake covered by the wall, was not adverse.

4. ———: ———: ———: ———: **Burden: Limitations.**  Where there
   is no evidence tending to show that defendants ever intended to
   limit their claim of ownership to the true boundary line when
   ascertained, the burden of proving that they intended to claim
   to the true line when that should be ascertained is upon the
   plaintiff; and the evidence must clearly show the existence of

such qualified claim sometime prior to the ripening of title by limitation.

5. ———: **Survey.** Even though the surveyor begins at the right starting point his survey has no probative value unless it or his testimony gives the distance "to the points or lines from which he established the lines of the lots" as the statute .(Sec. 12721, R. S. 1919) requires.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

AFFIRMED.

*Stubenbrauch & Hartz* for appellants.

(1)   This is an action in equity.  In such cases this court will review the facts and determine upon the correctness of the judgment.  Herryford v. Moore, 181 S. W. 390; Gill v. Newhouse, 178 S. W. 495; First National Bank v. Fry, 216 Mo. 24; Myers v. Schuchmann, 182 Mo. 159; Primm v. White, 162 Mo. App. 594, 142 S. W. 802; Grazt v. City of Kirkwood, 165 Mo. App. 196; Courtney v. Blackwell, 150 Mo. 245.   (2)   The defendants made no claim to plaintiffs' property under color of title. The defendants in their pleading assert that they have had the possession of that part of plaintiff's property now in dispute for more than ten years under claim of ownership and therefore have title by limitation.   In such cases to make title by limitation two things are necessary; first, actual physical possession of the property in dispute, and second, such possession must be accompanied by a claim to the title.   Either one without the other is not sufficient.   Benne v. Miller, 149 Mo. 228; Golterman v. Schiermeyer, 125 Mo. 291; Stevenson v. Black, 168 Mo. 560; Ware v. Cheek, 201 S. W. 847. (3)   The evidence, however, did not show any actual physical possession of plaintiffs' property by defendants before 1913.  The acts relied upon to establish possession must always be as distinct as the character of the land reasonably admits of and should be so patent

that the owner of the ground could not be deceived. Golterman v. Schiermeyer, 125 Mo. 291; Musick v. Barney, 49 Mo. 463; 2 Corpus Juris, 55. Nor did defendants make any claim to the title to that part of plaintiffs' ground now occupied by defendants' improvement before the summer of 1913. (4) The evidence fails to show that defendants intended to claim title to the north edge of the improvements in question regardless of the true line. Defendants claim they never knew that their improvements were in any respect on plaintiffs' property, and that they did not know it now. How, then, can there be adverse possession?

*Milford W. Rider* for respondents.

(1) The finding of the trial court that defendants have been for more than ten years prior to the bringing of this suit, in open, notorious, exclusive, continuous and adverse possession under a claim of ownership of the tract in question, was warranted by the evidence. Bingham v. Edmonds, 210 S. W. 885; Walbrunn· v. Ballen, 68 Mo. 164; Mather v. Walsh, 107 Mo. 121. (2) Actual, continued, notorious and hostile possession is tantamount to a claim of ownership. Wilkerson v. Eylers, 114 Mo. 254. (3) Where persons in possession of land hold possession for the statutory period up to a line claimed by them to be the true line, then such possession is adverse. The mere fact that such person is ignorant of the true line does not weaken his rights where he has, for the necessary period, claimed that the line as held by him was the true line. Mangold v. Phillips, 186 S. W. 488; Walbrunn v. Ballen, 68 Mo. 164; Batner v. Baker, 108 Mo. 311; Davis v. Braswell, 185 Mo. 576, 581; French v. Pearce, 8 Conn. 440, 21 Am. Dec. 680; Rennert v. Shirk, 163 Ind. 542; Anderson v. Buchanan, 116 N. W. 694; Hitchings v. Morrison, 72 Me. 331; Sadtler v. Peabody Heights Co., 66 Md. 1; Matthews v. Ry Co., 110 Mich. 170, 64 Am. St. 336; Seymour, S.· & Co. v. Carli, 31 Minn. 81; Weeks v. Upton, 99 Minn. 410; Crary

v. Goodman, 22 N. Y. 170; Barnes v. Light, 116 N. Y. 34; Hindley v. Manhattan Ry. Co., 185 N. Y. 335; Eldridge v. Kenning, 12 N. Y. Supp. 693; Gist v. Doke, 42 Ore. 225. (4) Where there is a question whether a party holding land beyond the boundary line intended to hold adversely, if there were permanent improvements made and used by the claimant, this would tend to show an intention to hold adversely. Mangold v. Phillips, 186 S. W. 988; Hamilton v. West, 63 Mo. 93; Cole v. Parker, 70 Mo. 372. (5) Even if in this State color of title were necessary to originate ownership by limitation (see Quick v. Rufe, 164 Mo. l. c. 412), that term, as used by appellants' counsel has no place in the law of boundary lines established by adverse possession. If one enclosed more land than is called for in his deed, and it be the intention of the possessor to hold and claim as his own all the land enclosed and possessed, such claim of ownership to such land is matured into a perfect title by the open, notorious, continuous, exclusive possession for the statutory period. Vogt v. Bergman, 189 S. W. 1166; Bingham v. Edmunds, 210 S. W. 885; Shotwell v. Gordon, 121 Mo. 482; Mangold v. Phillips, 186 S. W. 988; Milligan v. Fritts, 226 Mo. 189; Handlan v. McManus, 100 Mo. 124; Hamilton v. West, 63 Mo. 93; Cole v. Parker, 70 Mo. 372. (6) Where adverse possession has been held for the statutory period up to a certain line, the burden is on the opposite party to show that such possession was with the intention of only claiming to the true line. Vogt v. Bergman, 189 S. W. 1166; Gloyd v. Frank, 248 Mo. 477; Mangold v. Phillips, 186 S. W. 988; Lemmons v. McKinney, 162 Mo. 525, 531; Bartlett v. Boyd, 175 S. W. 947; Hodges v. Pollard, 149 Mo. 216, 226.

HIGBEE, P. J.—The petition states that plaintiffs are the owners of and entitled to the possession of the south 30 feet of the north 40 feet of lot 41, corrected plat of North Altamont, an addition in Kansas City, Missouri; that the defendants are the owners of a tract about 30 feet wide south of and adjacent to plaintiffs' lot;

that the defendants, on or about March —, 1915, wrongfully and unlawfully entered upon and erected certain permanent improvements upon the south one foot of plaintiffs' premises, to-wit: a stone wall six feet high and twenty inches thick, made of stone and mortar, a concrete sidewalk, and part of a three-story building; that said unlawful occupation constituted a cloud on plaintiffs' title, which plaintiffs are entitled to have removed. The prayer is that plaintiffs be adjudged to be the sole owners and entitled to the exclusive possession of the said lot and for a mandatory injunction ordering defendants to remove said improvements from plaintiffs' property, and for general relief.

The answer is a general denial, and a plea of more than ten years' adverse possession, also of estoppel and laches. The court found the issue for the defendants on the plea of adverse possession.

The lots are each about thirty feet wide, fronting on the west side of Brooklyn Avenue, and 124 feet deep; plaintiffs' property being number 2928 and defendants' number 2930, Brooklyn Avenue. Plaintiffs, George W. Diers, and his sister Blanche Diers, acquired title to their lot June 25, 1912, and took possession thereof at once. Defendants' lot was about eighteen inches higher than plaintiffs' lot. Miss Diers testified that in the year 1913 the defendants began making improvements on the cottage on their lot, and also built a stone wall five or or six feet high, extending from the front of the lots westward a distance of 24 feet; from that point they built a concrete walk on the north side of the house thirty-two feet long, and from the west end of this they continued the wall to the rear end of the lots; that she protested to Mr. Peterson that he was encroaching on plaintiffs' lot, but he insisted he was on the line. They offered in evidence an unofficial survey made by Mr. Clarke, a civil engineer, which showed that the north face of the stone wall at its east end extended eight-tenths of a foot over the line of his survey onto plain-

tiffs' lot, and that this line intersected the north face of the wall at a point eighty-four feet west of the northeast corner of defendants' lot, and that the west end of this line was fifteen-one-hundredths feet north of the north face of the wall. Defendants were engaged for several years in rebuilding their dwelling house, and when completed Miss Diers testified that the roof or covering over a door on the north side of the house projected one or two inches over the surveyor's line. George Diers testified that he never talked to Peterson about his improvements being over the line, but that he refused him permission to build a scaffold projecting over onto their lot, and that after the wall and the foundation of the house were completed, he told Peterson he thought it was over on plaintiffs' lot.

The defendants bought their lot from Lee Utley in March, 1903. Sylvester Peterson testified that in the year 1902, Utley erected a small cottage on the lot, built a concrete sidewalk in front of the lot which extended north to the north line of the triangle or strip in dispute prolonged east, and also constructed a stone retaining wall along the north side of his lot to keep the soil from washing away. This wall was from twelve to fourteen inches thick, and from one to two feet high. The north face of the wall was in line with the north end of the sidewalk, and with an arrow mark cut in the curbstone by Utley. The eastern portion of Utley's lot was graded up to the wall about eighteen inches higher than plaintiffs' lot. At the time defendants purchased the lot, Utley showed them the property and the north end of the sidewalk, the mark in the curbstone, and the north line of the wall as the north boundary of the lot. He also showed them two stakes, each with a tack in it, at the northeast and northwest corners of the lot, and another mark in the curbstone thirty feet south of the first mentioned mark as indicating the south line of the lot.

The testimony of the defendants is that they took possession of their lot in March, 1903, and have lived there ever since, occupying and improving the premises between the boundaries as above indicated, and claiming ownership in fee; that Washington Linck, through whom plaintiffs derive title to their lot, owned the plaintiffs' lot, and that in the summer of the year 1903 he built a wire fence along the north face of the stone wall which remained there about ten years or until it fell into disrepair; that in 1906, they constructed a concrete walk along the north side of their house about twenty-one inches wide on the top of and coinciding with the north face of this retaining wall. This walk was used by the defendants' roomers for ingress and egress through a side door in their house. They also filled the west part of their lot, which was low, and graded it back to the paved alley in the rear of the lot. In the year 1913 defendants raised the retaining wall to a height of five or six feet, the entire length thereof (except where the concrete walk was constructed on the north side of their house), building on the top of the old wall. They also rebuilt and enlarged their house, making it a three-story building. They denied that either of the plaintiffs ever claimed that defendants were encroaching on their property. A number of witnesses also testified that there was a cement walk, and a retaining wall twelve or eighteen inches thick, on the north line of the defendants' lot, and that this wall was later increased in height, the present wall being built on top of the old wall. One witness, J. F. Stivers, a contractor, testified that he saw this wall in process of construction in 1902; that while he was painting Peterson's house in 1913, Peterson was building on the old retaining wall that was there in 1902. This testimony was corroborated by other witnesses.

The plaintiffs and a number of witnesses familiar with the premises testified in rebuttal, in substance, that there was no retaining wall or concrete walk as claimed by defendants prior to 1913; that there was a slight

terrace between the lots, with vines or climbing roses growing on it; that if there was a retaining wall as claimed by defendants, it was covered up and they had never seen it.

It is unnecessary further to recapitulate the evidence. Suffice it to say that we have carefully read the evidence and in our opinion it sustains the contention of the defendants as to the facts in issue in the case.

I.   The retaining wall was built by Utley in the year 1902, on a line with the stakes marking the north-east and northwest corners of the lot, the mark in the curbstone and the north end of the sidewalk. This act of itself was tanta-mount to a claim of ownership. Mr. Linck, through whom plaintiffs derive their title, built a post and wire fence along the north face of this wall in the summer of 1903, which remained there until it fell into disrepair. He and his successors in title thus recognized the north face of the wall as the boundary line between the lots. The evidence is quite conclusive that the defendants had occupied their lot with the acquiescence of the successive owners of plaintiffs' lot, claiming this wall as the south boundary, for more than fifteen years before this action was brought. Under these. circumstances, the burden was on the plaintiffs to show that the possession by Utley and the plaintiffs up to this boundary line was subject to future ascertainment of the true line. If there had been no evidence of the establishment of an agreed line, the possession and use of the lots on each side of this line by the respective owners thereof since the year 1902 are evidence that it was an agreed boundary and it is only necessary that such possession and use of the land continue long enough to show that they knew the boundary between their lots. [Martin v. Hays, 228 S. W. 741, 744, and cases cited.]

If, however, Utley, by mistake and in ignorance of the true boundary, in building the wall encroached on

*Margin note: Boundary Line: Acquiescence: Intention.*

his neighbors' lot, and he had no intention of taking what did not belong to him, the fact that he may have inclosed a larger area than his deed called for would not destroy the adverse character of his possession, if his intention was to claim and hold to the north face of his wall. But if he built the wall along and upon what he believed to be the true line and intended to claim only to the true line, then such possession was not adverse. [Milligan v. Fritts, 226 Mo. 189; Mangold v. Phillips, 186 S. W. 988.] There is nothing, however, in the evidence that tends to indicate that Utley or the defendants ever intended to limit their claim of ownership to the true boundary line when ascertained. The testimony is very distinct that Utley and the defendants at all times claimed to the north face of the wall. The burden of proving that they only intended to claim to the true line wherever that should be ascertained to be, was on the plaintiffs (Gloyd v. Franck, 248 Mo. 468, 477; Vogt v. Bergmann, 189 S. W. 1166; Nichols v. Tallman, 189 S. W. 1184), and the evidence must clearly show the existence of such qualified claim to possession at some time prior to the ripening of title by limitation. Conflicting testimony as to vague or uncertain conversations occurring after the rights of the party in possession has been fixed by possession and limitation, is not sufficient to reduce the character of the possession or to divest rights so acquired. The policy expressed by the statutes of limitation would be practically worthless if parol testimony were permitted to nullify rights conferred by the statute. [Hedges v. Pollard, 149 Mo. 216, 226.] When a boundary line is so established and possession is taken by the parties up to the line, "the deed is accomplished and each owns up to the line as fully as if it were a natural boundary and their respective deeds called for it. [Brummell v. Harris, 148 Mo. 430.] And in the same opinion it is said that possession and use up to such line is evidence of such an agreement." [Lemmons v. McKinney, 162 Mo. 525, 532.]

290 Mo.—17

II. Mr. Clarke, a civil engineer, testified he established the south line of plaintiffs' lot and established the corners; that he started at the center of Thirtieth Street at the intersection of Brooklyn Avenue; that he did not find the original stakes at this time. Conceding the correctness of the starting point, neither his testimony nor the plat of the survey which he produced gave the distance "to the points or lines from which he established the lines of the lots," as required by Section 12721, Revised Statutes 1919. Even if this survey had been made by the official surveyor, it would have no probative value. "The very purpose of the statute, requiring the surveyor to 'give the distances to the points or lines from which he established the lines of the lots,' etc., was to make them prima-facie evidence of the facts therein stated, and thereby avoid the necessity of resorting to parol evidence to show its accuracy, which otherwise would have to be done, where the surveyor was absent or dead." [Clark v. McAtee, 227 Mo. 152, 184.] This was the only evidence on the part of plaintiffs tending to show that the wall encroached on their lot. As heretofore seen, it had no probative value.

*Survey.*

The judgment of the learned trial court was for the right party and it is therefore affirmed. All concur.