# MARCH, 1941.

S. C. EDIE, APPELLANT, v. M. B. COLEMAN, BELLE E. COLEMAN, C. B. McKEEVER AND CURTIS L. CARTER, RESPONDENTS.—141 S. W. (2d) 238.

Kansas City Court of Appeals.   May 20, 1940.

Writ of Certiorari quashed by Supreme Court, April 18, 1941.

*Miller, Gumbiner, Sheffrey & Van Valkenburgh* for appellant.

*Wm. Bush* for respondents.

BLAND, J.—This is an action in ejectment. The case was tried before the court, without the aid of a jury, resulting in a judgment against the plaintiff and he has appealed. The appeal was taken to the Supreme Court but that court found that jurisdiction of the appeal rested in this court and transferred the case here.

The suit was brought against M. B. Coleman, Nellie E. Coleman, and their tenants, C. B. McKeever and Curtis L. Carter. However, the last two persons did not appear in the action. The judgment was in favor of M. B. and Nellie E. Coleman, who are hereinafter called defendants.

Plaintiff claimed title to the property in controversy by reason of being the record owner thereof. Defendants claim the property by adverse possession.

The facts show that defendants own property situated at the northeast corner of 37th and Olive Streets, in Kansas City, described as the south thirty-five feet of Lot 37 Sunset View. Plaintiff is the record owner of the property adjoining to the north, which property is described as the north twelve and one-half feet of Lot 37 and the south twenty-two feet of Lot 38 Sunset View. In the year of 1907 and ever since there was a dwelling house on the lot now owned by defendants, and then owned by one Baltis, known as 3647 Olive Street, which dwelling house was wholly upon defendants' lot and did not, at that time, extend over on to the property now owned by plaintiff. In that year the property was sold and conveyed by Baltis to one Jack O. Cooper. In the year of 1909 Cooper had Baltis build a second dwelling house facing south on the lot now owned by defendants, which house was known and described as 2410 East 37th Street. This house has at all times extended over and upon the

premises and lot now owned by the plaintiff at a point beginning 102.9 feet east of the west line of plaintiff's lot and continuing east 16.9 feet, said dwelling house extending over and upon plaintiff's lot 1.54 feet at the west end of the encroachment and 1.48 feet at the east end thereof. This dwelling house was, and is, adjoined by a concrete sidewalk twenty-two inches in width, which is upon the lot of plaintiff so that the north edge of said concrete sidewalk is three feet four inches north of the south line of plaintiff's lot.

Subsequent to the year of 1909, and on a date unknown, Cooper had Baltis build an addition to the dwelling house known as 3647 Olive Street, consisting of two bedrooms, a bath, a concrete drain and a basement under said rooms. Said addition, at the time it was built, and ever since, has extended over and upon the lot and premises now owned by plaintiff, commencing at a point 66.6 feet east of the west line of plaintiff's lot and continuing 17.6 feet east thereof, extending over and upon plaintiff's lot, as aforesaid .34 feet at the west end of said addition and .16 feet at the east end thereof and, in addition thereto, and adjoining said addition, as aforesaid, on the north and on the east thereof, and on plaintiff's lot, there was constructed a concrete walk twenty inches in width and at one point three feet six inches in width. All of the encroachments on plaintiff's ground were shown by a plat or survey introduced in evidence, and stipulated by the parties as being correct.

Cooper mortgaged his property to the Commerce Trust Company and defendants purchased the note secured by the deed of trust in April, 1930, and acquired title to the property by foreclosure of the deed of trust on March 23, 1933. Plaintiff acquired his property from one Herman A. Berger on June 24, 1924. At this time, all of the improvements aforesaid had been erected for some time. About the time defendants acquired title to their property, plaintiff decided to build a concrete driveway along the south side of his and caused the survey above mentioned to be made on March 29, 1933, which disclosed the encroachments on plaintiff's lot as above set forth. Shortly thereafter plaintiff made demand for the possession of the property encroached upon and defendants refused to remove the dwelling house, encroachments or extensions, resulting in this suit being brought on February 23, 1935.

The evidence further shows that neither plaintiff, nor defendants nor their predecessors in title, knew of the encroachments in question until March 29, 1933.

Jack O. Cooper, a witness for plaintiff, testified that he "did not know that the addition to 3647 Olive nor the rear of the house facing south on 37th Street encroached upon the lot to the north of him. He didn't know it then (when the encroachments were made) and he doesn't know it now except from the plat (survey) and assuming that the plat is correct. The first he knew that there was any con-

troversy about the boundary was when he met Mr. Berger in 1933 and was informed by Mr. Berger that S. C. Edie had filed suit against said Berger because the two houses were on Edie's lot.'' He further testified: ''If any part of the houses on the property formerly owned by the witness on the northeast corner of 37th & Olive Street in Kansas City, Missouri, extend over onto the North twelve and one-half feet of Lot 37 and the South twenty-two feet of Lot 38, Sunset View, Kansas City, Missouri, and known as 3647 Olive, so far as the witness is concerned it does so by mistake and he had no knowledge of it until he was advised of that fact by Mr. Berger in 1933. At the time Mr. Berger told the witness about it, 'witness thought dead sure Berger was wrong and advised him to have a survey made.''

He further testified: ''It was not until 1933 that the witness had any notice that the house known as 3647 Olive Street and the house known as 2410 East 37th Street extended over onto the lot upon which Mr. Berger's house stood, and if they do extend over onto that lot it is without the witness' knowledge. Witness never had any intention during the time he lived on the lot of claiming title to any property that Mr. Berger owned at that time and he didn't claim to own it because he didn't know he was on it. If he had known he was on it, he would have been glad to have paid Mr. Berger the cost per foot of the lot. Never at any time did he claim to own any part of the North twelve and one-half feet of Lot 37 and the South twenty-two feet of Lot 38, Sunset View, in Kansas City, Missouri, by adverse possession. Witness never had a survey made of his property. He lost possession and ownership of his two houses about 1933 by foreclosure. The allegation in the defendants' second amended answer that the witness had been in actual, open, notorious, exclusive, adverse, and hostile possession of that part of plaintiff's property which was encroached upon is not true 'because I didn't know I had possession of it.'

''Q. Then as I understand it you only, during the time you lived there and the time you owned that property—you only pretended to own the real estate which you had purchased by deed from G. M. Baltis in 1907, whatever that real estate happened to actually be according to that deed? A. That is correct.

''Q. And that you didn't ever intend to own any other land except that? A. That is right.''

He further testified that ''At the time the witness owned the corner property he did not know that the buildings and improvements encroached on the property on the north. When he made the mortgage to the Commerce Trust Company he warranted that he had title to the corner property according to its legal description. At that time the Commerce Trust Company looked at the property and told him they would let him have $3000 on it. He told them where the property was and what he had on it and he claimed to own both houses. At

the time 2410 East 37th Street was built and at the time 3647 Olive Street was remodeled had witness learned the following week that the improvements encroached on the lot north of him, he would have let Baltis move the house because he did not want to be on somebody else's ground or he would have paid him the value per foot for it. He was not willing to do that at the time because he did not know anything about it, but had he known it he would have been willing to do so. . . . The witness claimed to own the houses or thought he owned them, he told the Commerce Trust Company he owned them and they were the only people to whom he had to make that claim. He had lived in one house and held himself out to the neighbors as the owner. He does not know what is meant by notorious. He had possession but he didn't know he had possession of another man's ground. He thought it was his ground during the fifteen years he lived there and during the twenty or twenty-five years he owned it. . . . He never claimed to own as against Mr. Berger or anyone else title to the Edie property even though his houses extended over onto that lot. He didn't claim any title to it and wouldn't have claimed it had he been shown that there was a mistake because he did not want anything that did not belong to him. . . . Witness was not trying to steal another man's land but did claim to own the house regardless of where the line was."

Defendant M. B. Coleman testified that he went out to inspect the property before purchasing the note and deed of trust; that the property was then in the same condition as it was at the time of the trial; that he did not know that the improvements encroached upon plaintiff's lot; that in order to remove the encroachments it would be necessary to "go down and re-build a wall in the basement, but you would have to take that north wall off. I would still be on it and I couldn't handle a house with the wall pulled out from under it;" that the cost of the work would be in the neighborhood of $1000; that the property, itself, including both houses, was not worth more than $3500 to $3800. Coleman's testimony was not contradicted.

The court made certain findings of fact, one of them reading: "That the defendants' grantor, Jack O. Cooper, did not at any time from the year 1909 to the year 1933, claim title to, or ownership of any of the North twelve and one-half (12½) feet of Lot 37 and the South Twenty-two (22) feet of Lot 38, Sunset View, an addition in Kansas City, Missouri, according to the recorded plat thereof, but did claim title and ownership of said permanent improvements."

From the findings of fact given and the declarations of law given and refused by the court, it appears that the court decided the case on the theory that plaintiff and his predecessors in title had not been in possession of the disputed ground for over twenty-five years but, on the other hand, Jack O. Cooper had merely the *bare possession of the disputed ground* and such possession of the ground for the statu-

tory period was not sufficient to establish title by adverse possession; that Cooper and defendants did not, at any time, claim title to or ownership of the disputed ground, but in view of the fact that Cooper did claim title to and ownership of the *permanent improvements* thereon from 1909 to 1933 and that such possession of *such improvements* for twenty-five years had been open, notorious, exclusive, adverse and hostile, to the plaintiff and his predecessors in title, plaintiff was not entitled to the possession of the disputed ground and rendered judgment against him.

Plaintiff insists that the court erred in entering judgment against him for the reason, among others, that, under the facts found by the court, judgment should have been in his favor.

No doubt, plaintiff is correct in his contention, although it is difficult to see how Cooper and defendants could have claimed title to and ownership of the improvements, *which became a part of the real estate when they were erected,* without claiming title to or ownership of the ground upon which they stood.

However, we do not think it follows that under the peculiar facts in this case, the result reached by the trial court was not the correct one. It is well established that a judgment of the trial court will be affirmed if it can be done so on any theory (Connelly v. Cone, 205 Mo. App. 395, 224 S. W. 1011; Renshaw v. Reynolds, 317 Mo. 484, 297 S. W. 374), and for the reasons hereinafter to be stated we deem the judgment was for the right party in this case.

Plaintiff says that there is ample testimony in the record to support a finding that Cooper had no intention, at the time he erected the encroaching improvements upon his neighbor's land, to claim more land than his deed called for, and that the findings of fact made by the trial court should be sustained and the judgment reversed; that, in any event, in order to sustain their claim it was necessary for defendants to establish that they and their predecessor in title claimed the disputed ground adversely, and that such adverse possession continued for a period of ten years (see section 850, R. S. 1929, Mo. Stat. Ann., sec. 850, p. 1121) prior to the bringing of this suit.

At the outset it will be well to state certain well-established principles of law governing adverse possession, before discussing the facts in this case and, after doing so, to apply them to such facts.

"There are five essential elements necessary to constitute an effective adverse possession: First, the possession must be hostile, and under a claim of right; second, it must be actual; third it be open and notorious; fourth, it must be exclusive; and fifth, it must be continuous." [Welsh et al. v. Brown, 339 Mo. 235, 96 S. W. (2d) 345, 347, 348.]

Persons claiming the title to disputed ground by adverse possession have the burden to prove all the essential elements of adverse possession, which includes the requirement that they show that they and

their predecessors in title held actual, open, notorious, continuous and exclusive possession, under an unequivocal claim of ownership for the statutory period. [Bell et al. v. Barrett (Mo.), 76 S. W. (2d) 394, 397.]

Where there is no actual dispute over the boundary line and one encroaches upon the land of another by building improvements, such as those involve in the case at bar, in ignorance of the true line, the fact that he has no intention of taking what does not belong to him will not destroy the adverse character of the possession if that possession is with the intention of holding and claiming all of the land covered by the encroachment. On the other hand, if the improvements are located on what is supposed to be the true line, and the party making them intends to claim only to the true line (to be thereafter ascertained or whenever and wherever it might be located), his possession is not adverse. [Milligan v. Fritts, 226 Mo. 189, 125 S. W. 1101; Diers v. Peterson, 290 Mo. 249, 256, 257, 234 S. W. 792.]

In Bell v. Barrett, *supra,* the court said, 76 S. W. (2d) l. c. 397: "In short, the determining factor is not what the encroaching owner knew about the true boundary line, but what he intended to unequivocally claim was his boundary line. The real question is: What was his claim? and not: Why did he make it?" Where, as here, it is shown that the buildings and improvements erected over the line by defendants' predecessor in title are of a permanent nature and, as here, defendants' and their predecessor's possession has existed for the statutory period of time, the burden is upon plaintiff to prove that it was the intention of defendants' predecessor in title or defendants to claim only to the true line. [Hedges v. Pollard, 149 Mo. 216, 226, 50 S. W. 889; Gloyd v. Franck, 248 Mo. 468, 477, 154 S. W. 744; Diers v. Peterson, *supra*; Mangold v. Phillips (Mo.), 186 S. W. 988.]

The fact that one encroaches on his neighbor's property by building a fence, or making improvements thereon, thinking the property is his, and that he had no intention of claiming any of his neighbor's property, is not controlling on the question as to whether the possession is adverse. If it were, the protection of the statute would be limited to those who deliberately set out to steal neighbor's property and to cases where there has been an actual dispute as to the location of the boundary line. In no other case does the occupant intend to claim the land adversely, regardless of legal title. If such were the law, then the man who innocently and inadvertently occupies and improves land beyond his true boundary line, or, in other words, one who most needs and deserves the protection of the statute, would be left without protection. [97 A. L. R. 20; Davis v. Braswell, 185 Mo. 576, 84 S. W. 870; McDaniels v. Cutburth (Mo.), 270 S. W. 353.]

"The better rule on the subject, is embodied in the doctrine that, in the absence of positive proof or unambiguous circumstances show-

ing that a possession is or is not adverse, the exclusive possession and use of land are presumed to be adverse, it is not necessary to show an intention to hold and claim the property in spite of the fact that the legal title may be in another. The possession of one who holds property as his own is adverse to all the world, although he never heard of an adverse claim. [Brown v. McKinney (Pa., 1840), 9 Watts 565, 36 Am. Dec. 139.] The possession, use, and dominion may be as absolute and exclusive where there is no dispute as to boundary, and hence the occupant has no actual intention to claim adversely to anyone, as where such an intention exists. And, in the absence of anything showing that he holds in subservience to the true owner, such possession must be held adverse. When a person goes into possession of land under a deed, he regards himself as the owner of specific land, of the particular ground which he sees with his eyes and furrows with his plow. His ownership, in his own mind, is not of an abstract parcel described by metes and bounds, or of a certain number of acres, but of particular land. The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own, and does not recognize or accede to any superior title." [80 A. L. R. 157, 158.]

"Now there are undoubtedly cases when a man has taken possession of a strip of land of his neighbor by mistake, when he does not have any intent to claim ownership thereof. In case of wild prairie land, for instance, we can readily see that a man, in order to make an inclosure for his cattle, and with that as his main purpose in mind, might put up a fence on what he conceives to be the approximate line of his land, without intending definitely to fix that as a line. Similar cases might arise in connection with lots in cities and towns, and hence the occupancy and use of the premises in dispute might not in such cases, in the mind of the jury or the court, be such as to show or raise a presumption that the land was actually occupied as owner or apparent owner. But where a man takes possession of a piece of ground as owner, exercises acts of ownership, believing it to be part of his own, but mistakenly so, what is his mental attitude likely to be? Not knowing of the mistake, an intent to correct the line at any time when the true boundary is definitely discovered is hardly conceivable, or would be rare indeed. So far as any mistake is concerned, that is not likely to enter his mind. Whatever affirmative psychological attitude he may be said to have is an intent to claim the land, though not from any one else, since he already considers it his own.

"Is it necessary to claim it from any one else? If so, that would seem to lead to this result: Inasmuch as he has no intent to claim from the true owner, because in the nature of things he is not likely

to have any such intent under the circumstances, and inasmuch as the presumption is that he holds in accordance with the true title, as above stated, therefore, in order that he may initiate any adverse possession at all, he must first discover the mistake, and therefore hold with what is akin to a felonious intent. The reasoning of some of the cases would seem to involve this necessary result.'' . [City of Rock Springs v. Sturm, 39 Wyo. 494, 273 Pac. 908, 913, 97 A. L. R. 9, 10.]

The cases relied upon by plaintiff are largely fence cases. In many of these cases the facts were such as to show that there was an intention on the part of the person erecting the fence to claim only to the true boundary line to be ascertained subsequently and not up to the fence itself. However, there are also a number of fence cases where the facts show that the intention of the builder of the fence was to the contrary. Fence cases, while in point as stating general principles of law applicable to all boundary dispute cases, are not on all fours with building cases, as to their facts. [49 A. L. R. 1017; Crapo v. Cameron, 61 Iowa, 447, 450, 451, 16 N. W. 523.] Here permanent improvements were erected, encroaching upon plaintiff's lot. The improvements made to the house known as 3647 Olive Street consisted of two bedrooms, a bath, a concrete drain and a basement under the rooms. In order to remove them it would require the removal of the north wall of the building, together with the basement wall. In order to move the houses an expenditure of $1,000 would be required, all of which shows that the improvements were of a substantial and permanent nature.

''The weight of authority is to the effect that one who remains in continuous, open and exclusive possession of a building of a permanent nature, which projects over the boundary line, during the statutory period of time in which actions to recover possession of real property may be maintained, acquires title by adverse possession to that portion of the adjoining property covered by the structure, though the building was erected in ignorance of the location of the true boundary line and supposedly on land rightfully owned by the builder. . . . It has been said that to acquire title by adverse possession to a strip of adjoining property the building must be of a substantial and permanent nature, sufficient to call the attention of the owner of record to the fact that an encroachment upon his property is taking place. . . . The position of the majority is that if one erects a building which projects over the boundary line, or purchases property upon which such a building has been erected, his continuous, open and exclusive occupancy of the building as erected establishes his intention to claim as his own all land occupied by the building, although the building was projected over the boundary line by mistake or ignorance as to the location of the line, and with no premeditated intention of including more than rightfully belonged to the builder, and that, after

the running of the Statute of Limitation, title is acquired to the land encroached upon.'' [1 Am. Jurisprudence, pp. 920, 921.]

The court said in McDaniels v. Cutburth (Mo.), 270 S. W. 353, 359, quoting from 2 Corpus Juris 58, 59, sec. 10: ''The making of permanent improvements on land, as by building permanent structures upon it, · . ·· . is always to be regarded a most significant act of adverse possession, because such an occupancy is of a character well calculated to inform the owner both of the fact of possession and that the intrusion is not intended as a mere temporary trespass.'' [See, also, Hamilton v. West, 63 Mo. 93, 96.]

The mere fact that the improvements are erected partially upon the ground of another does not conclusively determine the question as to whether the intention of the erector, at the time, is to claim the ground encroached upon adversely to the owner, *if there is evidence of a substantial character to the contrary.* [Milligan v. Fritts, 226 Mo. 189, 125 S. W. 1101; 80 A. L. R., page 157.] However, in this case, the burden was upon plaintiff to show that the claim was not adverse, that is, to show by unequivocal testimony that the improvements were erected under such circumstances as to show an intention on the part of Cooper merely to claim only that which his deed called for as the true boundary line to be thereafter ascertained, rather than an intention to claim, as owner, the ground upon which the encroachments were made. Unless plaintiff sustained this burden of proof, he was not entitled to recover in this case. [Hedges v. Pollard, 149 Mo. 226, 50 S. W. 889; Diers v. Peterson, 290 Mo. 257, 234 S. W. 792; Mangold v. Phillips, *supra*; Gloyd v. Franck, *supra*.]

We now come to the testimony of Cooper, himself, the man who erected one building and built the addition to the other. Defendants claim that Cooper was an unfriendly witness to them for the reason that his property had been foreclosed by them. There is nothing in the record directly showing this to be true. However, he was called as a witness for the plaintiff, and the ·evidence, on its face, may so show, as defendants contend, we need not say, for the credibility of his testimony was solely for the attention of the trial court, subject to the limitations hereinafter stated, and we must take his testimony as true subject to such limitations. The testimony of Cooper of what he did, if we exclude his testimony of what his secret intentions were, shows conclusively that his intention was to claim the ground encroached upon when he placed the improvements upon plaintiff's ground, rather than an intention on his part to change them when the true facts as to the title to the ground came to light. This is borne out by the nature of the improvements themselves which he extended over onto his neighbor's ground and further by his statement that when Mr. Berger told him that the improvements encroached upon plaintiff's property, he advised Berger to make a survey, thinking that Berger ''dead sure'' was wrong, and when the Commerce Trust

Company made the loan on his property he told it "where the property was and what he has on it and he claimed to own both house." He told the Commerce Trust Company that "he owned the houses and they were the only people to whom he had to make that claim. . . . He held himself out to the neighbors as the owner."

It is hardly conceivable that a man would erect improvements of this kind, consisting of a house and an addition to another with concrete walks, all encroaching upon his neighbor's ground, with the intention of ascertaining the true line at some subsequent date. If he had any doubt about it he would have ascertained the true line before he constructed these permanent improvements. However, it is conceivable that an intention to the contrary might be shown under proper evidence. In this case Cooper testified that during all of the twenty-seven years he held title to the corner he claimed to own the building and improvements "regardless of where the line was." Of course, the buildings and improvements were a part of the land and he could not own the buildings and improvements without owning the land upon which they were located. This, of course, follows as a legal conclusion, but it is possible that a layman might have a conscious intention of claiming only the improvements and not the land upon which they were situated. However, the facts that Cooper was claiming to own the improvements, regardless of where the property line was located, is a circumstance indicating the condition of Cooper's mind. It is true that Cooper, on the witness stand, expressed an intention in regardless to the matter to the effect that he did not intend, at any time he owned the property, to claim title to or ownership of any part of plaintiff's ground; that he was claiming only what his deed called for and would have moved the houses if he had known that he was upon someone else's ground or at least would have paid for the ground. However, as before indicated, if he had any such intention, it was a secret intention and was contrary to everything that he actually did and said prior to the trial of this cause, so far as the record shows.

The matter of intention is seldom, if ever, capable of direct or positive proof, but is arrived at by such just and reasonable deductions from the acts and facts proven. [Hagerty v. Hagerty, 186 Iowa, 1329, 1334, 172 N. W. 259.]

"Intent is an emotion or operation of the mind, and can usually be shown only by acts, declarations, and circumstances known to the party charged with the intent." [Hooker, Corser & Mitchell Co. v. Hooker et al., 103 Misc. 66, 170 N. Y. S. 570, 573, 574.]

"The intent of a person cannot be proven by direct and positive evidence. It is a question of fact, to be proven, like any other fact, by acts, conduct, and circumstances." [People v. Johnson, 131 Cal. 511, 514, 63 Pac. 842, 843.]

"The intent with which an act is done denotes a state of the mind,

and it can be proved only from expressions, or conduct, or both, considered in the light of the given circumstances." [State v. Johnson, 84 S. C. 45, 47, 65 S. E. 1023, 1024.]

These are rules of evidence and the question of intention is ordinarily for the attention of the trier of the facts. It has been said in a case involving diversity of citizenship: "In determining the question of intention the courts are not limited alone to the acts and declarations of the party whose citizenship is in question. It has a right to consider his own testimony as to his intentions, and such testimony in this particular will be controlling, unless negatived by his acts or declarations proven in the case." [Collins v. City of Ashland, D. C., 112 F. 175, 179.]

A party may testify to his intention at a given time but where his testimony is at variance with the proven *facts* his testimony is of little value. [Hulett v. Hulett, 37 Vt. 581, 586, 587; Firth v. Firth, 50 N. J. Eq. 137, 24 A. 916; In re Steer, 157 English Reports, Reprint, 606; Seymour v. Wilson, 14 N. Y. 567, 569, 570.]

There is no question but that what Cooper did, as distinguished from what he said on the witness stand concerning his secret intention, shows conclusively that he intended to claim the ground upon which he encroached, as his own, even if he lacked an intention to take any of his neighbor's property. Most of the testimony of the witness upon which plaintiff relies as showing an intention on his part not to claim any of his neighbor's land, consists merely of expressions of opinions, as to what he would have done had he known, at any time he owned the corner property, that he was encroaching on his neighbor's ground. We refer to his testimony that he would have removed the improvements, etc., from his neighbor's land had he known that they encroached upon it. [2 C. J. S., Adverse Possession, 636, sec. 84.] He did state: "Q. Then as I understand it you only, during the time you lived there and the time you owned that property—you only pretended to own the real estate which you had purchased by deed from G. M. Baltis in 1907, whatever that real estate happened to actually be according to that deed? A. That is correct." It was, no doubt, this, and similar testimony of Cooper, upon which the trial court based its finding that Cooper did not claim any title to or ownership of the disputed ground, itself. However, this testimony was in conflict with his testimony that he erected the encroaching improvements and that he had no knowledge that he had encroached upon his neighbor's property. How could he have intended or "pretended" to own no more land than his deed called for under all of the circumstances? He could have had no intention either way, except that disclosed by what he did, that is, the erection of valuable improvements of a lasting nature, extending over on to his neighbor's property, and telling the Commerce Trust Company when he borrowed the money from it that he owned both houses and held

himself out to the neighbors as owning them. Of course, when he said he owned the houses he meant that he owned every part of them, including the parts that encroached upon his neighbor's property.

We need not go to the extent of saying, were this case an ordinary one, not involving the matter of the burden of proof in an adverse possession case, that in view of the testimony of Cooper as to what his secret intention was, the whole matter would not have been for the attention of the trial court, sitting as a jury. However, to say the least, his testimony is conflicting and we are of the opinion that, taken as a whole, it does not measure up to the standard as laid down in the cases of Hedges v. Pollard, *supra*; Gloyd v. Franck, *supra*; Diers v. Peterson, *supra*; Mangold v. Phillips, *supra*, to sustain the burden of proof cast upon the plaintiff to show that the encroaching parties were not claiming anything more than to the line to be thereafter ascertained when the encroaching parties have shown adverse possession for the statutory period of time. In the Hedges case, it was stated, 149 Mo. 226, 227, 50 S. W. 891: "The burden of bringing the case within the exception to the rule of a possession for the period of limitation not being adverse between adjoining owners, because always held subject to a subsequent ascertainment of the true line, was upon the plaintiffs, and must clearly show the existence of such qualified claim to possession at some time prior to the ripening of title by limitation. Conflicting testimony as to vague or uncertain conversations occurring after the rights of the party in possession had been fixed by possession and limitation is not sufficient to reduce the character of the possession or to divest rights so acquired. The policy expressed in Statutes of Limitation would be practically worthless, if parol testimony was permitted to nullify rights conferred by the statute. In personal actions, promises must be in writing in order to take the case out of the operation of the Statute of Limitations, and, by parity of reasoning, the same principle should obtain in real actions. The reason of the rule as to personal actions is to prevent the possibility of perjury, and the same reason applies with equal cogency to real actions. True, the rule as to personal action is statutory, and there is no such statute as to real actions. But it is also true that the qualification upon a statutory right acquired by virtue of the Statute of Limitations is purely of judicial origin, and is a matter of construction, and the only safe rule is for the courts to acquire clear and unequivocal acts or admissions within the statutory period of limitation. This alone should be deemed a sufficient excuse for not beginning an action within the period limited by the statute."

Following the reasoning of these cases it is quite apparent that a witness who will take the stand and testify to acts and conduct showing a given intention and then say that he entertained a secret intention, at the time, directly opposite to that shown by his acts and

conduct, is entitled to have his testimony, as to his secret intention, given no weight in cases of this kind.

We are of the opinion that the finding of the trial court that Cooper and defendants did not claim title to or ownership of the disputed ground cannot be sustained under the evidence.

While it is a general rule that the trial court, sitting as a jury, must pass upon all questions of fact, we feel that it would be useless to remand this case for another trial as all of the facts have been developed and they show, as a matter of law, that plaintiff is not entitled to recover. As was said in Renshaw v. Reynolds, 317 Mo. 491, 297 S. W. 378, another trial would be a "barren formality."

The judgment is affirmed. All concur.